## THE STATE v. SIMMS, *Appellant.*

| 68 | 305 |
|----|-----|
| 97 | 111 |
| 68 | 305 |
| 116 | 112 |
| 68 | 305 |
| 141 | 107 |
| 68 | 305 |
| 147 | 287 |

1. **Requisites of Affidavit for Continuance.** An affidavit for a continuance on the ground of the absence of witnesses, must state that there are no other witnesses obtainable by whom the facts sought to be proved by the absent witnesses could be proved, and must show diligence in attempting to procure the presence of the absent witnesses.

2. **Insanity**: INSTRUCTIONS. On the trial of an indictment for murder where the insanity of a prisoner was set up as a defense, the court instructed the jury that the fact that some or all of the ancestors of a person had been insane, did not of itself prove that person insane,

and that in the absence of direct and preponderating, evidence of insanity at the time of the killing, it could not be justified on that plea; *Held*, error.

3. ——: CONTRADICTORY INSTRUCTIONS. The giving of contradictory instructions may afford sufficient ground for reversal.

*Appeal from Howell Circuit Court.*—HON. J. R. WOODSIDE, Judge.

Indictment for murder. The facts are stated in the opinion.

*A. H. Livingstone* and *E. Y. Mitchell* for appellant.

*J. L. Smith*, Attorney-General, for the State.

HENRY, J.—At the April term, 1878, of the Howell circuit court, the defendant was indicted for the murder of one James Reese.

The indictment was found by the grand jury on the 23rd day of April, and on that day the defendant made an application for a change of venue, which was refused on the 24th; on the 26th the defendant applied for a continuance, and his affidavit was as follows: "Now, at this day, comes James Simms, the defendant in this case, and moves the court for a continuance on account of the absence of witnesses whose testimony is wanted; that this testimony is material in this cause, and that he cannot safely proceed to trial without such witnesses; that the indictment herein was returned against him at this term of the court, and that it is impossible for him, under the circumstances, to obtain such witnesses at this term of the court, in consequence of the short time that he has allowed him; that his witnesses reside in the counties of Shannon, Oregon, Butler and Howell, in this State; that affiant has good reason to believe, and does believe, that he will be able to procure the testimony and attendance of said witnesses at the next regular term of this court; that this application for continuance of this cause is not made for the

The State v. Simms.

purpose of vexation or delay, but that substantial justice may be done, and that affiant has a good and meritorious defense to this cause."

It will be observed that the affiant did not state that there were no other witnesses present by whom he could 1. REQUISITES OF prove the same facts he expected to establish AFFIDAVIT FOR CONTINUANCE. by the absent witnesses. He did not state any facts constituting diligence in attempting to procure the presence of the absent witnesses, and on these grounds my associates think the action of the court overruling the the motion was proper.

I think it otherwise. There was no cause for trial until the indictment was returned into court. Until then it was not the duty of the prisoner, nor had he the right to have subpœnas issued to compel the attendance of witnesses. The indictment was returned into court on the 23rd, and the cause was called for trial on the 26th, when the application for a continuance was made. The witnesses resided in the counties of Shannon, Oregon, Butler and Howell, and it is apparent that the defendant had not had time to procure their attendance. If it had been a second application, or if the term of court had continued several weeks after the indictment was found, and between then and the calling of the cause for trial, the defendant had had ample time to get ready for the trial, and used no more diligence than his affidavit disclosed, the application would have been properly refused; but in the language of Wagner, J., in the *State v. Klinger*, 43 Mo. 127: "Considering the short time that intervened between his arraignment and his being put upon trial, it was scarcely to be expected that he could have obtained the desired testimony. Under all the circumstances, it seems to me that it would have better comported with the humanity of the law to have sustained the application and given defendant another continuance." As, however, my associates think otherwise, it is useless to discuss the question.

That defendant shot and killed Reese, is not denied,

but the evidence showed that he and Reese were on good terms, and that defendant went to his house to pass the night; that Reese was absent, and was not expected by the family to return home until the next morning. The defendant had had a difficulty with one Hudlow, who resided in the neighborhood. Between sundown and dark, Reese, unexpectedly to the family, returned home, and as he was in the yard approaching the house, Simms went to the door, and said, "Gentlemen, what will you have?" and fired his pistol, the shot taking effect in the body of Reese, who shortly afterwards died of the wound. The testimony of Mrs. Reese, widow of the deceased, was that when Simms got up, he said he heard somebody, and went to the door. He helped carry Reese into the house, went for a physician, and, in the language of Mrs. Reese, "spread the news among the boys as he went." She further testified that Mr. Reese exclaimed, after he was shot, "Lord, John, you have killed me." Simms said "he thought it was Hudlow."

The defense relied upon was, that defendant was insane, and also that he shot under the apprehension that Hudlow was coming to Reese's house to attack him.

It is very clear that he did not intend to shoot, or kill Reese, but that is no excuse if he shot intending to kill Hudlow without reasonable ground to believe that Hudlow was about to do him some great bodily harm. Defendant may have had such an apprehension, but it was an insane hallucination if he had, because Hudlow was not there, nor is there a particle of evidence to show that defendant had any grounds for believing that Hudlow intended him any harm. There is but little evidence as to the difficulty between defendant and Hudlow, in fact the only evidence was that there had been a difficulty.

The evidence strongly tended to prove the insanity of defendant, but there was a conflict of evidence on that issue, and the instructions given by the court on that subject generally, are in harmony

2. INSANITY. instructions.

with the decisions of this court; one, the fifth for the State, was erroneous. It declares that the fact that some or all of the ancestors of a person have been insane, does not of itself prove that person insane, and if there is no direct and preponderating evidence of insanity of defendant at the time he killed Reese, the jury cannot justify or excuse the killing on that plea.

The vice of that instruction is, that it requires direct proof of insanity. What is meant by the term "direct," in that connection, I cannot tell, but it was calculated to make an impression upon the minds of the jury that evidence of the insanity of one of defendant's aunts and two of his sisters, which was proved, was not worthy of much consideration, but the evidence must be *direct* that defendant was insane. Direct evidence would be that of medical experts, that they had examined the defendant and found him insane, or of persons who had been familiar with him, and from their personal observation believed him insane. If the instruction means anything, it was intended to exclude from the consideration of the jury all other evidence of insanity. An act which would not indicate the insanity of a person in whose family there had been no case of insanity, might be a very strong circumstance to prove insane, a person whose aunt had died in a mad-house, and two of whose sisters were maniacs.

It may be urged that this error was cured by the fifth instruction for defendant, "that the fact of defendant's in-

**3. ——: contradictory instruction.** sanity may be established by facts and circumstances as well as by direct evidence." That instruction is not explanatory of the fifth for the State, but is in direct conflict with it. One states that nothing but direct evidence will be sufficient, and the other that direct evidence is not required to prove insanity. Which would the jury adopt as a guide? What is there to indicate to them which should govern them? The possibility, that under the circumstances, they were misled by the fifth instruction for the State, is a sufficient ground for

the reversal of the judgment. Even in civil cases judgments are reversed because the trial court gave contradictory instructions. *Simmons, Garth & Co. v. Roberts*, 60 Mo. 581. See also *State v. Mitchell*, 64 Mo. 191.

If the character of the evidence and the crime showed that the defense of insanity was a mere pretext, we should listen with more favor to the argument that the instructions, all taken together, presented the case fairly enough to the jury, but in the view we take of the whole case, we think that justice will be subserved by remanding the cause for a new trial.

The judgment is, accordingly, reversed and the cause remanded. All concur.

REVERSED.

SHERWOOD, C. J., agrees with HENRY, J., that the court should have granted defendant a continuance.