THE STATE v. GRANT, *Appellant.*

1. **Kansas City Police**: POWER TO ARREST WITHOUT WARRANT. The police of Kansas City are authorized to make arrests within the limits of the city without warrant. Acts 1874, p. 329, § 5; Acts 1875, p. 195, § 3. But if an arrest be for a past act, whether misdemeanor or felony, it can be made without warrant only when the officer has grounds of reasonable suspicion, such as would justify him at common law in arresting for a past felony.

2. **Larceny.** A larceny may be regarded as still in process of accomplishment so long as the original caption is still unbroken and the original asportation is yet in progress.

3. **Homicide**: KILLING OF OFFICER. Where the State relies upon the fact that the victim of a homicide was an officer acting in the discharge of his duty to fix the character of the offense, it should be shown that the slayer knew the fact.

4. **Murder in the First Degree.** The deliberation and premeditation necessary to constitute murder in the first degree may be inferred from all the facts and circumstances of the killing.

5. ——. The court properly submitted to the jury in this case the question of murder in the first degree.

6. **Impeachment of Witnesses.** For the purpose of impeaching a witness it is competent to inquire as to his general moral character.

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE,. Judge.

REVERSED.

Defendant, a negro, was indicted for the murder of Patrick Jones, a policeman of Kansas City. Evidence given at the trial tended to prove that in the afternoon of the 3rd of April, 1882, sometime between five and eight o'clock, two pails of butter were stolen from the office of Adams Express Company at Kansas City, but that the fact was not discovered till the next day; that about 7:40 o'clock in the evening of the 3rd, Jones and one Miller, a witness in the case, were sitting in front of Fleming's saloon, which was from 300 to 500 yards from the express office when defendant and another negro passed them, one carrying a sack with something in it, the other a pail; that the suspicions of both Miller and Jones were aroused and Jones left Miller and followed the men; that in about two and a half minutes Miller heard a shot and running in the direction which Jones had taken found him lying near the sidewalk, dead, with his club and his pistol in his belt; that the sack and two pails of butter were lying near him; that Jones was in uniform; that it was about dark; and that defendant admitted to several witnesses that he did the shooting. Other facts that were proven are stated in the opinion.

At the request of the prosecuting attorney, the court gave the following instructions:

1. If you find from the evidence that, on or about the 3rd day of April, 1882, at the county of Jackson, in State of Missouri, the defendant, George Grant, willfully, deliberately, premeditatedly and of his malice aforethought, shot and killed the deceased, Patrick Jones, then you will find defendant guilty of murder in the first degree.

2. The word "willfully," as used in the foregoing in-

struction, means intentionally and not accidentally. "Deliberately" means in a cool state of the blood, that is, not in the heat of passion, caused by lawful provocation. "Premeditatedly" means thought of beforehand, any length of time, however short; a moment or an instant is sufficient. "Malice" does not mean mere spite, ill-will or dislike, as we understand it in ordinary language. It is here used to denote a bad or unlawful condition of the mind; such a condition of the mind as a man is in when he intentionally commits a wrongful act ; or in other words, such a condition or state of mind as indicates a heart devoid of social duty, and fatally bent on mischief.

3. That the deliberation and premeditation necessary to constitute murder in the first degree may be inferred from all the facts and circumstances connected with the killing, and if they existed a moment before the killing, it is sufficient.

The court of its own motion, gave the following instructions:

1. If the deceased, Patrick Jones, was, at the time of his death, a police officer of the City of Kansas, State of Missouri, and the defendant by himself or with the assistance of another, was engaged in taking and carrying away the personal property of another, without the assent of the owner, with the intent to convert such personal property to his own use, or to the use of himself and the person assisting him, and the deceased believed that the defendant and the person assisting him were so engaged, and also believed that immediate interference on his part was necessary to prevent the accomplishment of such taking, carrying away and conversion, or to prevent the escape of the offenders, then he, the deceased, had a right, with or without a warrant, to pursue and arrest the defendant and the person with him, and to use such force (short of taking the life of the defendant, or the person assisting the defendant), as was reasonably necessary to effect such arrest.

Therefore, if the jury shall believe from the evidence that the deceased, as such officer, was proceeding under circumstances such as are enumerated, and in a lawful manner, as defined in this instruction, to arrest the defendant and the person with him, or either of them, and that while he, the deceased, was so engaged, the defendant, in order to prevent such arrest, willfully, deliberately, premeditatedly and of his malice aforethought, shot and killed the deceased, they will find the defendant guilty of murder in the first degree.

2. Although the jury may believe from the evidence that the deceased, Patrick Jones, was a police officer of the City of Kansas, yet if they also believe from the evidence that he attempted to arrest the defendant under circumstances not authorizing him to attempt such arrest, as specified in these instructions, or that in attempting such arrest he used force more than was reasonably necessary, as defined in these instructions, and the defendant had reasonable cause, from the conduct of the deceased at the time, to apprehend a design on his part to take his, defendant's life, and had reasonable cause to believe that there was immediate danger of such design being accomplished by the deceased, and that he, the defendant, shot and killed the deceased to prevent the accomplishment of such design, the jury will find the defendant not guilty, because the killing of deceased, under such circumstances, is justifiable in law, because done in self-defense.

3. If the jury shall find that the killing of officer Jones (if. done by the defendant) was not justifiable on the ground of self-defense, but shall find that the circumstances at the time of the attempted arrest were not such as to authorize him, said Jones, according to the law as given to you in these instructions, to attempt to arrest the defendant, and that the defendant shot and killed the deceased while he, the deceased, was so endeavoring wrongfully to arrest him, such shooting and killing constitute manslaughter in the fourth degree only, the punishment for

which is imprisonment in the penitentiary for two years, or imprisonment in the county jail not less than six months, or a fine not less than $500, or both a fine not less than $100 and imprisonment in the county jail not less than three months.

4. For the purpose of determining the right of officer Jones to attempt the arrest of defendant, it is not at all necessary that the jury should find that said Jones saw the defendant perform the specific act of taking. It is sufficient if the defendant was found engaged in the perpetration of the offense, which the taking and carrying away of the personal property of another without the assent of the owner, with the intent on the part of the person so taking and carrying away to convert such personal property to his own use, constitutes. The court further instructs the jury that the offense which the taking and carrying away of personal property of another without the owner's assent, with the intent on the part of the taker to convert the same to his own use, is what is known in the law as larceny.

Other instructions were also given in relation to reasonable doubt, the weight of evidence, the credibility of witnesses, the presumption of innocence and the effect of statements by defendant for and against his own interest.

*W. A. Harnsberger* and *R. H. Field* for appellant.

Jones' attempt to arrest was unlawful. (1) Because he had no reasonable cause for suspecting these parties guilty of a felony. Bare suspicion will not justify an arrest without warrant. It must be one that is based upon probable cause and one that would be reasonable to the mind of an ordinarily prudent person. Foster's Crown Law, pp. 320, 321, § 23; 1 Wharton Crim. Law, §§ 429, 430; Wharton Crim. Plead. and Prac., §§ 8, 9; *Shanley v. Wells*, 71 Ill. 78; *Mathews v. Biddulph*, 3 M. & G. 390; *Findlay v. Pruitt*, 9 Port. (Ala.) 195; *Hall v. Hawkins*, 5

Humph. 357; *Somerville v. Richards*, 37 Mich. 299; *Skeen v. Monkeimer*, 21 Ind. 1. (2) Because he knew of no offense that they had committed. The theft of the pails of butter had not then been discovered. (3) Because an arrest for a past misdemeanor not committed in his presence would not be authorized without a warrant even if there was reasonable cause for suspecting them of that offense. *Comm. v. Carey*, 12 Cush. 246; *Comm. v. McLaughlin*, 12 Cush. 615; *State v. Crocker*, 1 Del. Crim. Rep. 434; *Shanley v. Wells*, 71 Ill. 78; *Boyleston v. Kerr*, 2 Daly (N. Y.) 220; *Pesterfield v. Vickers*, 3 Cold. (Tenn.) 205; *Mathews v. Biddulph*, 3 M. & G. 390; 1 Bishop Crim. Proced., §§ 624, 640; *Bowditch v. Belchin*, 5 Exch. 378. There was no evidence as to whether the butter was worth more or less than $30. Hence the supposed offense may have been a misdemeanor for all that was shown by the State, and it devolved upon the State to show that it was a felony. *Mathews v. Biddulph*, 3 M. & G. 390; *Griffin v. Coleman*, 4 H. & N. 265; *People v. Muldoon*, 2 Parker Cr. Rep. 13; *State v. Wingo*, 66 Mo. 181. If it was a misdemeanor the offense was complete before the men passed Jones. It was complete when the butter was taken out of the express office. 1 Wharton Crim. Law, §§ 923 to 927; 2 Bishop Crim. Law, §§ 794, 795; *Lacy v. State*, 7 Tex. Ct. App. 403; *People v. Pratt*, 2 Hun 300; *People v. Gordon*, 40 Mich. 716. (4) Because he was a policeman and as such he had no authority that was shown in evidence to arrest under any circumstances without a warrant. Dillon on Munic. Corp., (3 Ed.) §§ 210, 211; *State v. Belk*, 76 N. C. 10; *Newark v. Murphy*, 40 N. J. L. 145; *State v. Underwood*, 75 Mo. 230; *Lacy v. State*, 7 Tex. Ct. App. 403; *Alford v. State*, 8 Tex. Ct. App. 545. (5) Because as a policeman of the City of Kansas, under the acts creating the Board of Police Commissioners, he had no authority to make an arrest in any case except under the supervision and direction of the commissioners, and nothing of that kind appeared in the evidence. Sess. Acts 1874, p. 329, § 5; Ib., p. 330, § 10; Ib., p. 333, § 16;

Sess. Acts 1875, p. 195, § 3. (6) Because it was an attempt to unreasonably seize the liberty of these persons when he had no charge preferred, or to prefer against them. An arrest without a warrant is not lawful from the simple fact alone that a party is guilty. The guilty have the same right to insist upon lawful authority before surrendering their personal liberty as the innocent have. *Drennan v. People,* 10 Mich. 169; *Way's case,* 41 Mich. 299; Const. Mo. art. 2, §§ 11, 30.

*D. H. McIntyre,* Attorney General, for the State.

The first instruction given by the court on its own motion cannot be complained of by defendant. It is more favorable to him than the strict letter of the law demands. The deceased had the right to arrest the defendant if he suspected that he was guilty of felony. 1 Bishop Crim. Proc., (3 Ed.) § 182; 1 Wharton Crim. Law, (8 Ed.) § 429; *Rohan v. Sawin,* 5 Cush. 281; *State v. Underwood,* 75 Mo. 230. Or, if he even suspected the defendant was guilty of a misdemeanor—as of petit larceny—by stealing and carrying away goods, the deceased, seeing him in the act of carrying them away, had the right to arrest defendant without a warrant. *Comm. v. Presby,* 14 Gray 65; *Reg. v. Turberfield,* 10 Cox C. C. 1; R. S., § 4821.

SHERWOOD, C. J.—The defendant, a negro, was indicted for murder in the first degree, on trial had was convicted of that offense, and comes here alleging numerous errors as reasons for reversal of the judgment of conviction. We have attentively examined those errors and will discuss some of them in detail, and such others as we deem necessary to discuss, we shall do no more than briefly notice in a general way.

I.

And first, as to the authority of the deceased, a police-

man, to make the arrest, as upon the existence of that hinges the whole case.

The local laws of 1874, page 327, relating to the City of Kansas, established a board of police to be called "The Police Commissioners for the City of Kansas." Section 5 of that act defines the duties of, and confers certain powers upon, such board of police; which section as amended by section 3 of the act of 1875, page 193, is as follows:

"The duties of the board of police hereby created shall be as follows: They shall at all times of the day and night, within the boundaries of the City of Kansas, as well on water as on land, preserve the public peace, prevent crimes and arrest offenders, protect the rights of persons and property,    *    *    see that all laws relating to pawnbrokers, intemperance, vagrants, disorderly persons,    *    *    every other kind and manner of disorder and offense against the public health and good order of society, are enforced. They shall also enforce all laws and ordinances passed or which may be hereafter passed by the common council of the City of Kansas, not inconsistent with the provisions of this act, or any other law of this State which may be properly enforceable by a police force. In case they shall have reason to believe that any person within said city intends to commit any breach of the peace, or violation of law and order, beyond the city limits, or any person charged with the commission of crime in the City of Kansas, and against whom criminal process shall have been issued, such person may be arrested upon the same in any part of the State, by the police force created or authorized by this act," etc., etc.

This section, in its first part, as will be observed, makes it obligatory on such board, "at all times of the day and night within the boundaries of the City of Kansas," to "prevent crimes and arrest offenders," and "protect the rights of persons and property." The power of the board to "arrest offenders," it will be observed, is not coupled with any conditions with respect to a warrant being first

obtained, but the grant of power is a general one, at least so far as concerns the arrest of " offenders." From this we may reasonably infer that the legislature intended by that section, to confer upon the board of police similar powers to those conferred by section 4821, (R. S. 1879,) which authorizes certain officers in cities of the second class, " to arrest, or cause to be arrested, with or without process, all persons," etc. And this view finds additional support when we consider a subsequent clause of the section under discussion, which authorizes the police force to arrest in any portion of this State persons in the city who intend to violate law beyond the city limits, or who are charged with the commission of crime in said city and " against whom criminal process shall have been issued." This construction is conformable to a familiar rule, as the legislature, by thus particularly specifying the occasions when the issuance of criminal process is necessary, may be presumed by such affirmative specification to exclude any implication for the necessity of such process except upon the occasions mentioned. *Ex parte Snyder*, 64 Mo. 58, and cases cited. And section 6 of the act of 1874, not repealed by anything contained in the amendatory act of 1875, gives power to the police commissioners, through the agency of a police force, vicariously to perform the duties which section 3 of the other act imposes. From these we may conclude that the power of a member of the police force to " arrest offenders " is not confined to any particular class of offenders or any grade of crime, but applies as well to misdemeanors as to felonies; provided always, that the officer who arrests for a past misdemeanor, has the same grounds of reasonable suspicion as would justify him at common law, in arresting for a felony already committed. For it is not to be intended that the legislature designed by that statute to countenance or authorize that a citizen be deprived of his liberty upon the mere whim, caprice or rash assumption of his guilt by an officer. But even at common law, though an officer could not arrest for a past mis-

demeanor, yet might he arrest, if he did so *flagrante delicto.* 3 Greenleaf Ev., § 123, and cases cited.

In the case before us, the testimony showed that the butter was actually stolen from the possession of Adams Express Company, and tended to show that it was in the act of being carried away, at the time of the attempted arrest. The value of the butter was not proven, nor was it material, considering the statutory powers of the officer as aforesaid, and the tendency of the testimony to establish that a larceny, petit it may be, was then being committed, and the further tendency of the testimony to show that the policeman had a reasonable suspicion that a misdemeanor had been committed, or was, in one sense, then in process of accomplishment.

It has been strenuously insisted that the larceny was complete at the time that the defendant and his companion passed by Fleming's saloon, and in one sense this is true. But it is also true, considering the distance from where the prisoner was observed with the butter, to the point where the larceny of it was committed, from 300 to 500 yards, there was sufficient evidence to go to the jury that the taking of the butter, and its being carried away, was, up to the point where the prisoner was observed, one continuous act. If a person, with larcenous intent, should barely raise an article from the floor, the caption and asportation would be so far complete, as to make the act a criminal one. But could the act as to one of the elements of the larceny, the asportation, be still regarded incomplete—be still regarded a continuing act—so long as the original caption was still unbroken, and the original asportation was yet in progress? We are of opinion that so it should be regarded.

If this be so, then the officer, even at common law, treating the crime as a mere misdemeanor, would have been fully justified in making the arrest. And certainly he was thus justified under the more ample powers conferred by the statutory provisions heretofore quoted.

In this view of the matter the first instruction given by the court of its own motion, was correct. That instruction is evidently framed on the double theory of a crime being then committed, and of the officer having ground to suspect that such was the fact. At the common law, as already seen, if the crime were a past felony, and the officer had a reasonable suspicion that the person he tried to arrest was guilty of the offense, this would justify him; and also he would be justified, if the misdemeanor were then in progress; and also, as already seen, under our construction of the statute, he would be justified if the offense, a misdemeanor, was then being committed, or were only a past misdemeanor and he had a reasonable suspicion as aforesaid. Taking this view of the instruction, it would be good on either of the grounds stated, and if good on either of those grounds, the jury were not misled, nor the defendant prejudiced by it.

It is true that the usual and perhaps better term, "reasonable suspicion " is not employed in the instruction, but we think the word " believed" is equivalent thereto, and was so understood by the jury. One of the ordinary definitions of belief is " partial assurance without positive knowledge or absolute certainty." Webster. And by another authority it is defined as " a persuasion of the truth * of a fact, formed in the way of inference from some other fact." Burrill Law Dict., title Belief. This would certainly be tantamount to, or even a stronger form of expression than " reasonable suspicion," or "probable grounds;" for either may exist, and yet no belief be generated in the mind. And the bases of " probable grounds " are very many, e. g., common fame, hue and cry levied, goods found on a person," etc. 2 Jac. Law Dict., title Constable, p. 41.

But notwithstanding the instruction was good as against the objections already considered, it was faulty in not instructing the jury in respect to the element of the knowledge of the defendant of the official character of the

deceased. This element is altogether absent from the instruction, nor is the lack supplied by any other. This point should have been submitted to the jury, as by failing to submit it to them, they may have thought it wholly immaterial whether the defendant was aware that the deceased was a policeman at the time of the attempted arrest. *State v. Underwood*, 75 Mo. 230. Mr. Wharton says on this subject: "Nor should it be supposed that this exemption from distinctive liability in cases where the officer's official character is not known, is founded on technical reasoning. Not only is it essential to the rights of the citizen that he shall be required to submit to arrest only when the official character of the demand is made known to him, but it is essential to the dignity of the State that its servants should be sheltered by these official prerogatives only when they are acting legally, and give notice that they so act." 1 Crim. Law, §§ 419, 648.

## II.

The second instruction given at the instance of the State, though technically incorrect, did no harm, if the official character of the deceased was known by the defendant, as in that event, there was no proof of lawful or any other kind of provocation which could reduce the grade of the crime charged. *State v. Talbott*, 73 Mo. 347; *State v. Ellis*, 74 Mo. 207.

## III.

The third instruction for the State is not obnoxious to the objection that it assumes the existence of premeditation and deliberation; it simply declares the law as heretofore asserted by this court, that the deliberation and premeditation necessary to constitute murder in the first degree, may be inferred from all the facts and circumstances of the killing. *State v. Talbott, supra,* and cases cited.

## IV.

Counsel for defendant claim that it was error to sub-

mit to the jury the question of murder in the first degree. We are of a different opinion. The defendant confessed the homicide to Carter, to Lockridge and to Jackson. The bullet in Jones' body was identical in shape and size with cartridges found on defendant at the time of his arrest, which occurred on the night of the killing. The officer was clothed in his uniform, had on his star, and was acting within the limits of his jurisdiction; from which it may be inferred that defendant was acquainted with his official character. Roscoe Crim. Ev., 760. Besides, defendant's statement to Carter that "the policeman tried to get it on to me, but I got on to him first," tended to show that defendant knew the official character of the officer at the time he fired the fatal shot. The officer was found dead, on his back, on the ground, with his hands stretched out, and his pistol and his club both in his belt; which physical facts strongly tended to negative the statement of the defendant that the policeman had endeavored first to shoot him. From these facts and circumstances the jury were well warranted in inferring, as by their verdict it appears they did, that defendant was guilty of the highest grade of homicide; and if there was anything which would lessen the grade of the offense, it belonged to him to prove the matter of extenuation. 3 Greenleaf Ev., § 144; *Comm. v. Webster*, 5 Cush. 304; *Rex v. Greenacre*, 8 C. & P. 35; but this he wholly failed to do, so that the facts and circumstances attendant on the homicide, and from which, as heretofore stated, the jury might legitimately infer premeditation and deliberation were left wholly unexplained and unextenuated.

The court, out of abundant caution, gave, on its own motion, an instruction on the subject of self-defense, and also one on the subject of manslaughter in the fourth degree. Of these it is unnecessary to say more than that they were very favorable to the defendant.

So far as concerns the other instructions given on the part of the State, and on behalf of the defendant, taken

in connection with those already commented on, they presented the law of the case very well to the jury, with the exceptions noted in the first and second paragraphs of this opinion.

## V.

There was doubtless error in refusing to allow Dr. Shipley to testify concerning the general moral character of the witness Miller. *State v. Miller*, 71 Mo. 590, and cases cited. But we can scarcely see how this ruling could have seriously prejudiced the defendant, as he admitted the homicide, and the testimony of Miller went to identify defendant as one of the parties whom the officer tried to arrest. And the residue of Miller's testimony was almost entirely corroborated by that of the wife of the policeman. However, the error can be corrected when this cause goes back for re-trial.

As to the other errors assigned, it is not necessary to notice them, as they may not occur again.

For the error committed in the first instruction given by the court on its own motion, the judgment will be reversed and the cause remanded. All concur.