State vs. Chevallier.

## No. 8993.

### THE STATE OF LOUISIANA VS. E. D. CHEVALLIER.

Testimony offered to show that the deceased was not in the habit of carrying deadly weapons, is irrelevant, in a prosecution for murder, where the defense is *self defense.*

That the deceased had large and influential family connections and friends; that the life of the accused, after the killing and before his bond was forfeited, was threatened by relatives of the deceased, is irrelevant testimony to rebut the presumption of guilt claimed to result from the forfeiture of the bond and flight from justice.

The State has a right to reëxamine a witness, before his leaving his seat, touching a matter testified to by him on cross-examination.

Testimony to establish that threats were made, is inadmissible, where it is not offered also to prove that they were communicated to the accused.

The testimony of witnesses, not yet heard, cannot be impeached. An attempt to do so, is premature.

Evidence is admissible to show the condition of the weapon of the deceased, when found.

The trial judge, at the request of the jury and in the presence of the accused and his counsel and where no objection is made, has a clear right to instruct the jury as to the different verdicts which they can render.

The bill of exceptions taken after the jury had retired from the box and which does not show the ground upon which it is based, is not entitled to notice.

The trial judge is right in refusing to charge the jury, that "where a witness, credible and " of good character swears affirmatively to the existence of a fact; that they heard and " saw things, that the testimony of witnesses as thus swear affirmatively is entitled to " more weight than the testimony of witnesses of good character and credible who swear " negatively that they did not see or hear." The charge, *as asked,* was too broad and lacked precision. Evidence of a negative nature, may, under particular circumstances, not only be equal, but superior, to positive evidence. Also, where a negative depends on the establishment of an opposite fact, such as an *alibi* for instance.

Where the judge was requested to charge the jury in writing and has done so, and where he is subsequently asked to give a special charge and expresses a readiness to give the same orally, or in writing, and it appears that counsel are willing that he should give the same orally and he does so, there is no occasion to complain that the same was not given in writing.

The ruling in 35 A. 535 and cases there cited, was made under quite a different state of facts.

Testimony cannot be received to impeach the testimony of witnesses, who did not swear to a particular fact, which he declared not to remember.

A continuance should not be granted and is properly refused on the ground of the absence of a witness, where legal steps have not been taken and due diligence used to secure him and when the case was fixed by consent, without any reserve of rights; the more so, where the evidence, if offered, would not be admissible. It is only where the exercise of the legal discretion was arbitrary and oppressive, that the appellate court will interfere, and then, provided the refusal has worked a manifest injury.

Special charges are properly refused where they are substantially covered by the general charge, or other charges, already given.

Hearsay evidence, not part of the *res gestæ* offered to show uncommunicated threats is illegal and was properly excluded.

36    81
45     8
45  1044
36    81
47  1232
36    81
50   600
36    81
107    48
36    81
109   347
36    81
117   386

APPEAL from the Seventh District Court, Parish of Catahoula. *Elam,* J.

J. C. *Egan,* Attorney General for the State, Appellee.
*Boatner & Boatner* for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The defendant was indicted and tried for murder. On a conviction of manslaughter, he was sentenced to ten years at hard labor. He appeals from the verdict and judgment.

The record contains twenty-two bills of exceptions; four, taken by the State and eighteen, by the accused.

It is needless to consider the first four, as the State asks an affirmance of the judgment appealed from.

## I.

The *first* of the other bills was taken to the refusal of the trial judge to allow evidence to show that the deceased was not in the habit of carrying pistols, or other arms.

The testimony was clearly irrelevant, particularly when it is considered that its object was, as intimated at the time it was offered, to establish a case of self-defense.

## II.

The *second* bill is to the refusal of the judge to permit evidence to be heard to prove "that the deceased had large and influential family connections and friends, that the life of accused after the killing of deceased and before his bond was forfeited was threatened by relatives of the deceased." The object for which the testimony was offered, was stated to be, to rebut the presumption of guilt claimed to result from the forfeiture of the bond and the flight from justice.

The evidence was irrelevant. If admitted, it could not have justified the forfeiture of the bond and the flight from justice, or rebutted the presumption mentioned.

The district judge says that he permitted the accused to show, after the flight had been proved, any fact explaining why he had fled and that after thus ruling, no question was put to the witness.

## III.

The *third* bill is to the ruling of the district judge permitting the State to examine a witness, after cross-examination had been closed by the accused.

It is difficult to realize what the objections were. They seem to be that the State had already dismissed the witness and that after such dismissal, the State could examine him no further.

The bill does not show that the witness had been dismissed. It avers that he had not left his seat, when the State offered to further examine him.

The State had a clear right to re-examine him, as was proposed to be done, touching "*shade trees*" which had been testified to by him, on the cross-examination by counsel for the accused and which, after all, it does not appear was a matter of any significance.

## IV.

The *fourth* bill is to the refusal of the judge to allow a question to be answered, the object of which was to show that on the Sunday morning preceding the homicide the deceased had made threats against the life of the accused.

The testimony was, properly, not allowed. It should have been offered also to prove that the threats thus made had been communicated to the accused. It is not pretended that it was offered for that purpose also.

The district judge states that he afterwards ruled that communicated threats could be received in evidence.

## V.

The *fifth* bill is to the refusal of the district judge of permitting State witnesses to be questioned on cross-examination, for the purpose of impeaching the testimony of other State witnesses not yet heard. The complaint has no merit. Witnesses who have not as yet been sworn and testified, cannot be impeached. The attack is premature. Waterman's Dig. p. 657, No. 126.

## VI.

The *sixth* bill is to the ruling of the judge permitting the State to offer evidence to show the condition of the pistol of the deceased when found and that it could not have been snapped.

It was perfectly legitimate for the State to establish such state of facts, particularly in a case where the defense was self-defense.

## VII.

The *seventh* bill is to a charge given by the judge to the jury, who, after retiring and being out all night had returned into court, asking for instructions as to the different verdicts they could render.

The charge given by the Court is embodied in the bill. It appears to be legal and fair and to have been given, after the judge had asked, whether there was any objection to his charging the jury as requested and no objection being made.

The objection was made after the jury had returned from their seats though not from the room. The bill does not state the grounds upon which the objection rests. It should have done and is, therefore, hardly entitled to notice.

## VIII.

The *eighth* bill is to the refusal of the district judge to charge the jury : " That where a witness, credible and of good character, swears affirmatively to the existence of a fact, that they heard and saw things,

that the testimony of witnesses who thus swear affirmatively is entitled to more weight than the testimony of witnesses of good character and credible, who swear negatively, that they did not see or hear."

The charged, *as asked*, was too broad and lacked precision.

The rule is that: when one witness swears positively that he saw or heard a fact, and another, who was present, merely swears that he did not see or hear it, and the witnesses were equally faith-worthy, the general principles would, in ordinary cases, create a preponderance in favor of the affirmative, where the position can be reconciled with the negative, without violence and constraint.

Evidence of a negative nature, may, under particular circumstances, not only be equal but superior to positive evidence. This must always depend upon the question: Whether the negative testimony can be attributed to inattention, error, or defect of memory and whether the witnesses had equal means and opportunities for ascertaining the facts to which they testify and exercised the same?

Suppose six persons, whose sense of hearing is excellent and who are, otherwise, equally competent, were placed in a room and told to watch whether the clock found in it strikes, or not, the hour; that faithful to their instructions, they had so watched when the large hand passed over *twelve* and had so continued watching for five minutes or more and that when interrogated, two were to swear that the clock had struck and four that it had not, it is manifest that it could not be claimed that the preponderance should be in favor of the testimony of the affirming witnesses.

The principle is further inapplicable, where a negative depends on the establishment of an opposite fact, such as an *alibi* for instance. *Starkie*, vol. 1, sec. 82, p. 516.

It has been often held that it is not true, as a matter of law, that negative evidence may not be sufficient to overbalance positive testimony. 98 Mass. 381; 18 Ill. 266; 8 Jones, N. C. 308.

In such cases, the jury or judge have to weigh, consider and decide for themselves somewhat regardless of general rules.

In the present case, it is clear that the district judge properly declined to give the special charge asked, as he was not bound to add to or take from the same. He, however, stated to the jury, without any objection being made, that they were the judges of the law and facts, as to innocence or guilt of the accused, virtually telling them that the weight which was to be given to conflicting testimony, had to be attached by them.

## IX.

The *ninth* bill is taken to a charge given orally by the judge, when he had been asked to charge the jury in writing.

The bill and the record show that the judge was requested to charge the jury in writing and that he did so and that it was after he had given the written charge that he was requested to inform the jury of the punishment inflicted for manslaughter and to give the definition.

The judge states that he expressed a readiness to give the charges orally or in writing and that it is when he became satisfied that counsel were willing that he should give them orally, that he did so.

There is nothing to show that the judge was asked and refused to give the supplemental charges in writing, or that he exhibited any unwillingness to comply with such request had it been made, or said, or did anything tending to throw on counsel any blame for the inconvenience, if any, to which the jury might be subjected.

The ruling in State vs Porter, 35 A. 535, and in the cases cited there, was made under quite a different state of facts and does not apply to this case.

## X.

The *tenth* bill is to the refusal of the district judge to allow a question to be answered, the object of which was to impeach the testimony of a witness previously heard.

That witness, the bill states, had never denied the facts contended for, but had merely answered that he did not remember whether he had, or not, done the particular act.

It is evident that this witness, by such answer, had proved nothing and that his credibility in that regard could not be attacked.

## XI and XII.

The *eleventh* bill is to the ruling of the district judge permitting the State to traverse the *affidavit* of the accused for a continuance and to show that there was a witness present, for the accused, who could testify to the facts that could be proved by the absent witness.

The *twelfth* bill is to the refusal of the judge to grant the continuance, on the face of the *affidavit* made by the prisoner, to secure the same.

It is sufficient to say that the judge did not err in refusing the continuance, for the reason: that no legal steps had been taken to secure the absent witness and no due diligence had been used and, further, because the case had been fixed for trial by *consent*, without any reserve of right.

Besides, there was a witness present, able and willing to testify as the absent one would have done, if present and testifying. It does not appear, nor is it claimed that this witness present ever was examined on the trial. 6 A. 556; 8 Mo. 606; 7 Tex. App. 549.

Finally, it is more than questionable whether the testimony expected to be given by the absent witness, if offered, would have been admissible, as its object was to prove hearsay declarations, not part of the *res gestæ*.

It must be an arbitrary and oppressive exercise of power on the part of the court, in refusing a continuance to justify the interference of the appellate court and the remanding of the case—although such interference is truly due and will not be denied, when the refusal has worked a manifest injury. Waterman's Dig. p. 112, No. 7.

In the present instance, the refusal of the judge to grant the continuance has surely worked no such injury. Crim. Law Mag. 1, p. 683; 68 Mo. 305.

### XIII and XIV.

The *thirteenth* and *fourteenth* bills are to the refusal of the judge to give special charges as to the law of self-defense and as to reasonable doubt.

The charges asked are questionable, but even if they were legal, it was unnecessary for the judge to have given them. His written charge, which covers some fourteen pages of the transcript, appears to be full, fair and legal, and covered substantially the charges asked.

### XV, XVI and XVII.

The *fifteenth*, *sixteenth* and *seventeenth* bills are to the refusal of the judge to permit hearsay evidence not part of the *res gestæ* and threats which, if made, had not been communicated to the accused. They are of no avail.

### XVIII.

The *eighteenth* and last bill is to the refusal of the judge to grant a *new trial*, under which no evidence was adduced or even offered. It practically refers to matters already considered and determined and incorporated on the bills passed upon.

The judgment appealed from sentences the accused for the commission of a crime perpetrated more than five years previous.

Judgment affirmed.