The State v. McNally.

---

## THE STATE v. McNALLY, *Appellant.*

1: Criminal Law :  EVIDENCE :  THREATS.  On a trial for homicide, evidence of threats should not be rejected because of their vagueness or the obscurity of language in which they are couched, and the threats of deceased, made fifteen minutes before his death, that he "was going to have blood before morning," are properly admitted upon the t ial of one charged with his murder, as tending to show that the deceased was the aggressor.

2. ——— : ——— : ———.  The nearness or remoteness of threats to the date of the commission of the crime does not affect their admissibility or competency.

3. ——— : OFFICER : ARREST.  A peace officer has the right to arrest without warrant for a misdemeanor where the arrest is made *flagrante delicto*, and he is possessed of the same powers in making such arrest, and is authorized to employ the same force, and to resort, where necessary, to the same extreme measures in overcoming resistance, as in case of a felony.    Per Sherwood and Black, JJ.

4. ——— : ——— : ———.  If an officer, in making an arrest for a misdemeanor, is resisted, he may apply force to accomplish the arrest, and if it become necessary to kill the offender to save his own life or person from great bodily harm, he may do so.    Per Henry, C. J.; and Norton and Ray, JJ.

5. ——— : MANSLAUGHTER : INSTRUCTION.  An instruction for manslaughter in the fourth degree, under Revised Statutes, sections 1249 and 1250, which would apply as well to manslaughter in the second degree, under Revised Statutes, section 1242, is incorrect.

6. ———: INSTRUCTION.  An erroneous instruction is not cured by a subsequent one which properly declares the law

7. ——— : ———. An instruction which overstates the minimum punishment prescribed by law for an offence is erroneous.

8. ——— : EVIDENCE : CHARACTER. Evidence of good character is always to be considered by the jury in making up their verdict as to the guilt or innocence of the accused, just like any other fact in the case, and no distinction is to be taken between evidence of facts and evidence of character.

9. ——— : INSTRUCTION : REASONABLE DOUBT. An instruction defining a reasonable doubt to be a "real substantial doubt" condemned.

*Appeal from Lafayette Criminal Court.*—HON. JOHN E. RYLAND, Judge.

REVERSED.

The following instructions were asked by defendant and refused by the court :

"3.    The court instructs the jury that if they believe from the evidence that at the time of the shooting and killing of deceased, Washington C. Hyde, defendant was a policeman within and for the city of Sedalia, in Pettis county, Missouri, whose duty it was to arrest parties found disturbing the peace of the inhabitants of said city, or found violating any of the ordinances of said city, and that defendant was attempting to arrest deceased while he (the deceased) was committing a breach of the peace in said city, by violent, tumultuous, offensive or obstreperous and insulting words, conduct or carriage, and that while defendant was in the discharge of his duty in attempting to make such arrest, the defendant as such officer met with forcible resistance from deceased by which a struggle was brought on between defendant and deceased, in which struggle deceased was shot and killed, then said killing was justifiable, and the right of defendant as such officer to shoot and kill deceased under such circumstances does not depend upon the principle of self-defence alone, but upon the necessity of defendant as such officer executing his duty."

"4. The court instructs the jury that if they believe from the evidence that defendant as a policeman within and for the city of Sedalia, Missouri, was, in the lawful discharge of his duty, attempting to arrest deceased, while deceased was engaged in the commission of a breach of the peace, and that deceased forcibly resisted said attempted arrest and brought on a struggle between defendant and deceased, and in said struggle it became necessary for defendant as such officer to shoot and kill deceased in order to overcome said resistance and effect said arrest, then said shooting and killing deceased was justifiable, although the jury may believe that defendant intentionally shot and killed deceased."

*Geo. W. Barnett* and *L. L. Bridges* for appellant.

(1) The court erred in excluding the evidence of witnesses Watson and Gaines as to the conduct and threats of the deceased a few minutes before the homicide. *State v. Elkins*, 63 Mo. 159 ; *State v. Alexander*, 66 Mo. 148 ; *Brownell v. People*, 38 Mich. 736. (2) The second instruction given for the state is erroneous, as it makes justifiable homicide, as applied to this case, consist of self-defence alone, and wholly ignores the third clause of section 1235, Revised Statutes. Whar. on Hom. (2 Ed.) 211, 212, 215 ; Bish. on Cr. Law (3 Ed.) 663 ; 1 Bish. on Crim. Proc. (3 Ed.) secs. 159, 169, 161 ; 2 Bish. Cr. Law (5 Ed.) 647, 648, 649, 560 ; 2 Hale P. C. 117 ; 1 East P. C. (3) The fourth instruction for the state improperly defines manslaughter in the fourth degree, under section 1249 or 1250, and applies as well to manslaughter in the second degree, under section 1242, Revised Statutes, and this instruction is not cured by the sixth instruction, though correct. *State v. Simms*, 68 Mo. 305. (4) The sixth instruction for the state is erroneous in that it overstates the minimum punishment for manslaughter in the fourth degree. *State v. Sands*, 77 Mo. 118. (5) The

seventh instruction for the state improperly states the law of self-defence. (6) The eighth instruction with regard to defendant's character should not have been given, and especially is the word, "palliate," objectionable at the last part of the instruction. *State v. Alexander*, 66 Mo. 148, 161. (7) The court erred in giving the ninth instruction for the state, in which the jury are told "that except under the plea of self-defence the question of the character of defendant is wholly immaterial." Such evidence is competent in every criminal case without regard to to the nature of the defence. *State v. Alexander*, 66 Mo. 148; *State v. Underwood*, 76 Mo. 630; Whar. on Crim. Evidence (8 Ed.) 57, 58, 66; *State v. King*, 78 Mo. 555. (8) The court erred in giving the twelfth instruction in defining a reasonable doubt as "a real, substantial doubt." Judge Philips condemns such an instruction in strong language in *State v. Owens*, 79 Mo. 619. (9) The language used by attorney for the state in his closing argument was calculated to do the defendant injustice.

*B. G. Boone*, Attorney General, for the state.

(1) The testimony of Gaines and Watson as to the conduct and threats of deceased before the homicide was properly excluded. *State v. Guy*, 69 Mo. 435. The threats were not communicated to defendant and there is no evidence that he had any knowledge of them until after the homicide. *State v. Sloan*, 47 Mo. 604; *State v. Keene*, 50 Mo. 357; *Powell v. State*, 19 Ala. 577; *People v. Rector*, 19 Wend. 569. The deceased was not attempting to carry out a threat at the time of the difficulty. *State v. Harris*, 59 Mo. 550; *State v. Evans*, 65 Mo. 574. (2) The second instruction for the state properly ignored the third clause of section 1235, Revised Statutes, because there was no evidence to justify the incorporation of this clause in the instruction. Whar. on Hom. (2 Ed.)

,sec. 217. (3) The fourth instruction properly defines man-slaughter in the fourth degree. It is not vague and indefinite, but if so is cured by the sixth instruction. *Henchen v. O'Bannon*, 56 Mo. 289; *Budd v. Hoffeimer*, 52 Mo. 297; *Porter v. Harrison*, 52 Mo. 524; *State v. Simms*, 68 Mo. 309. (4) The sixth instruction contains no error for which the judgment should be reversed. *State v. Gann*, 72 Mo. 374. (5) The seventh instruction is a correct declaration of the law. *Nichols v. Winfrey*, 79 Mo. 547. Defendant was the aggressor and under the circumstances of the case cannot excuse himself. 1 East P. C. 312; Whar. Crim. Law (7 Ed.) sec. 1288. (6) The eighth instruction as to character is correct. *State v. Alexander*, 66 Mo. 161. (7) The ninth instruction has been sanctioned by this court. *State v. Keene*, 50 Mo. 360. (8) The twelfth instruction as to reasonable doubt has been approved by this court from the *State v. Nueslein*, 25 Mo. 111, to *State v. Jones*, 78 Mo. 282. (9) Defendant's third and fourth instructions were properly refused, (a) because there was no evidence that he was a policeman within and for the city of Sedalia; (b) if he was a policeman he could, under his appointment, only act as such about the market house in Sedalia; (c) he was not a policeman of the city and had no authority to make arrests, except as above stated. Revised Statutes, section 4295.

SHERWOOD, J.—The defendant was indicted for the murder of Wash. C. Hyde. The homicide occurred after dark in the second story of the Dexter building in the city of Sedalia. The deceased, who, it seems, was a man of powerful physique, and had a reputation of being violent and dangerous when in his cups, was, on the evening in question, engaged in kicking in the panels of a door, and when remonstrated with by one of the inmates of the building, answered with abusively profane language, whereupon the recorder of the city, Fraker,

being telephoned respecting the disturbance, ordered the defendant, who was a policeman, to arrest deceased, and while engaged in executing this order the killing occurred. There was some testimony tending to show that the homicidal act was unnecessary in order to effect the arrest, and that rashness characterized defendant's conduct; but there was much testimony to the contrary, indicating that the shooting was accidentally done in the endeavor and struggle to make the arrest, and indicating also that the arrest could not have been made without resorting to the most extreme measures. Being tried, the defendant was found guilty of manslaughter in the fourth degree, and his punishment assessed at two years imprisonment in the penitentiary and judgment in accordance therewith. Various errors are assigned for the reversal of this judgment. They are based on the giving of improper instructions on behalf of the state; the refusing of proper instructions on behalf of defendant; the rejection, when offered on his part, of competent evidence, and the improper language used in the closing argument of counsel for the state.

I. There was an error in refusing to admit testimony touching deceased's threats, made some fifteen minutes before the shooting occurred, that "*he was going to have blood before morning.*" The testimony of the defendant, corroborated to some extent by that of Prof. Moore, the inmate of the building, who had telephoned Fraker for a policeman, was that, upon the arrival of defendant at the scene of the disturbance, deceased had refused to be arrested, violently assaulted him, and having something in his hand, had struck the defendant and knocked him down, and in the struggle, and while deceased was making threats of killing defendant and grabbing for the latter's pistol, it was twice by accident discharged, one of the balls piercing defendant's left coat sleeve and shirt sleeve, near the wrist, and the other inflicting the fatal wound on deceased, which is the basis

of the present indictment. This evidence as to threats of deceased was competent on the same ground that evidence of uncommunicated threats is competent where the deceased is the aggressor. The reason for the admission of such evidence is that it throws light upon the transaction, on the motive of the deceased and the nature and character of the assault, in resisting which he is killed. *State v. Elkins*, 63 Mo. 159 ; *State v. Alexander*, 66 Mo. ·148.

And evidence of such threats, "*or declarations of intention*," as they are termed in *State v. Dickson*, 78 Mo. 433, is not to be rejected because of their vagueness or the obscurity of language in which they are couched, human experience and the annals of crime having established that very frequently those intending crime in particular or crime in general are accustomed to indulge in mysterious innuendoes or vague boasts having reference to the perpetration of some homicidal offence. Burrill on Circ. Ev. 338; Wills on Circ. Ev. 45. Numerous instances of this kind, in addition to those cited, are to be found reported where the threats are vague and general; *ex. gr.*, threats against " all policemen." *State v. Grant*, 79 Mo. 113. Declarations when exhibiting a knife, that the party making them " had made up his mind to kill a man ;" that " he would take some man's life before next Sunday." *Benedict v. State*, 14 Wis. 423. In *State v. Guy*, 69 Mo. 430, the threat was, "I'll kill him before day," without mentioning any particular person. To the same point see *Stewart's case*, 19 St. Tr. 100; *Rex v. Barbot*, 18 Ib. 1251. Such vague and general declarations have been received in a civil case. *Carver v. Huskey*, 79 Mo. 509. And the nearness or remoteness of the declarations of intention have no bearing on their admissibility or competency. *State v. Adams*, 76 Mo. 355. Here it seems they were made almost contemporaneously with the assault made and the resistance to

lawful arrest.  Such language indicates "a heart regard-less of social duty, and fatally bent on mischief," and that its possessor was more likely to prove the aggressor in some sudden quarrel, or less likely, if engaged in disturbing the peace, to cease such disturbance and quietly submit to the demands of those in legitimate authority.

II.  There was error also in the second instruction on behalf of the state, in that, while recognizing the doctrine of justifiable homicide as applied by section 1235, Revised Statutes, it wholly fails to give recognition to the third subdivision of that section, which declares a homicide justifiable "when necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed; or in lawfully suppressing riot or insurrection, or in lawfully keeping or preserving the peace."  It was on the errand of "preserving the peace" that defendant was sent by a conservator of the peace, as a peace officer, and the law threw around him in that capacity the full measure of its protection.  But this protection was denied him by the court in ignoring in the instruction under discussion the official character of the defendant on the occasion referred to, thus putting him in the attitude of an ordinary individual, relying on the ground of mere self-defence.  And the error just mentioned was of a piece with that which refused the third and fourth instructions asked by defendant, and gave none in lieu thereof.  The idea embodied in those instructions should have been presented to the jury for their consideration, coupled, however, very clearly with the further idea that in order to the justification of the officer he should have employed no greater force than was absolutely necessary to effect the arrest of the deceased.  And the jury should also, in the same connection, have been told that if, while the officer was lawfully engaged in attempting the arrest of the deceased, the pistol was accidentally discharged, owing to the act of

the latter in resisting the officer, that the officer was as much justified as though the shooting had been intentional.

III. A peace officer has the right to arrest without warrant for a misdemeanor where the arrest is made *flagrante delicto*. 3 Glf. Ev., sec. 123, and cases cited; *State v. Grant*, 76 Mo. 236. And he is the possessor of the same powers in making such arrest, and is authorized to employ the same force, and to resort, where necessary, to the same extreme measures in overcoming resistance, as in case of a felony. Russell says: "In all cases, whether civil or criminal, where persons having authority to arrest or imprison, and using the proper means for that purpose, are resisted in so doing, they may repel force with force, and need not give back; and if the party making resistance is unavoidably killed in the struggle, this homicide is justifiable." 1 Russ. Cr. (3 Eng. Ed.) 665. Bishop says: "In misdemeanors and breaches of the peace, as well as in cases of felony, if the officer meet with resistance and the offender is killed in the struggle, the killing will be justified." 2 Cr. Law., sec. 650. And the learned author in another work when treating of the same subject of resistance to arrest by a person whose arrest is attempted, says: "If, instead of flying, he stands and resists, then the party having the right to arrest may press forward in his purpose, even though the case be not one of felony. And if, not desisting but still pressing forward, he is obliged to take the life of the other as in self-defence, he will be justified." 1 Crim. Proc., sec. 617, and cases cited.

The preceding observations condemn also as erroneous the fifth instruction given at the instance of the state, in which the jury were told that though defendant, as a policeman, "had the right and authority to arrest Hyde, but did not have the authority to kill him,

even though he could not have been otherwise taken, unless they also believe that defendant committed such killing in necessary self-defence." If the language of this instruction were the law, it is patent to the most casual observation that a peace officer "would be of all men the most miserable," compelled by his duty to press forward and make arrests when ordinary misdemeanors were being committed, or where, as in the case at bar, some violent and dangerous man was "making night hideous" with the most flagrant breaches of the peace, the officer would proceed with the consciousness that though the law imperatively demands at his hands the arrest of the law breaker, yet it gave no adequate powers for the accomplishment of the end commanded, but while placing the officer in position of extreme peril took from him all protection arising from his official character and the performance of his official duty and placed him on the same plane as an ordinary individual when engaged in a private quarrel, and invoking the doctrine of self-defence. The bare statement of such a proposition constitutes its own ample refutation. The law never requires an impossibility, and having made it the duty of peace officers to make arrests, to quell disturbances and breaches of the peace, it is not so unreasonable as to deny the means to compass the end commanded.

Since writing the above I find that the above remarks have given pause to a majority of my associates, and they decline to concur with me, so I thought best, as the point is highly important—one of the most important in criminal law ever before us—to add something more in the way of remarks, citation and discussion of authorities. Foster says: "Something hath been said briefly under the head of homicide in advancement of justice, touching the killing of officers in the execution of their offices, and of other persons having authority to

·arrest or imprison, or acting under color of such au-
thority.    But this being a matter in which the justice of
the kingdom is deeply concerned I will now submit to
consideration my thoughts upon that subject more at
large.    Ministers of justice, while in the execution of
·their offices, are under the peculiar protection of the
law.    This special protection is founded in great wis-
·dom and equity, and in every principle of political
justice.    For without it the public tranquility cannot
possibly be maintained, or private property secured ;
nor in the ordinary course of things will offenders of
·any kind be amesnable to justice.    And for these rea-
:sons the killing of officers so employed hath been deemed
·murder of malice prepense, as being an outrage wilfully
·committed in defiance of the justice of the kingdom ;
the strongest indication possible of the *malitia*, the·
malignity of heart which I· have already stated and ex-
plained.''    Foster's Crown Law, sec. 1, p. 308.    Else-
where he also says:    ''Homicide in advancement of
·justice may likewise be considered as founded in neces-
sity ;  for the ends of government will be totally de-
·feated, unless persons can, in due course of law, be made
·amesnable to justice :  and, therefore, where persons hav-
ing authority to arrest or imprison, using proper means
for that purpose, are resisted in so doing, and the party
making resistance is killed in the struggle, this homicide·
is justifiable.    And, on the other hand, if the party hav-
·ing authority to· arrest or imprison, using the proper
means, happeneth to be killed, ·it will be murder in all
who take a part in such resistance ;  for it is homicide
·committed in spite of the justice of the kingdom.    The
rule I have laid down supposeth that resistance is made,
and upon that supposition it will, I conceive, hold in all
cases, whether civil or criminal ;  for in the case of resist-·
ance in either case the person having authority to arrest·
·or imprison may repel force by force, and if death en-

sueth in the struggle he will be justified. *This is founded in reason and public utility; for few men would quietly submit to an arrest if in every case of resistance the party impowered to arrest was obliged to desist and leave the business undone.*" Sec. 2, pp. 270–271. To the like effect see 1 E. P. C. 295.

An author heretofore quoted says: "There are circumstances in which the taking of human life is one of the high duties cast upon official persons in respect of their offices, and though the duty is not to be sought, yet its performance, like that of all other duties, is truly commendable; it should never be made ground of reproach. Of course, in all these circumstances the force which caused the death was not unlawful." 2 Bish. Cr. L., sec. 644. And in the same connection the learned author says: "Now, if one, whether an officer or private person, is making an arrest, and he keeps within the bounds of the law, he does nothing unlawful. Consequently he commits no crime, though he cause the death of him whom he is attempting to arrest." *Ib.* sec. 646. "The same is true when one causes death in the lawful exercise of his right of self-defence." *Ib.* sec. 645.

Thus showing, in the mind of the writer, the marked distinction between the exercise on the part of a private individual, of the right of self-defence, the "*first law of nature,*" and the exercise by the officer of the *simple functions of his office, the first law of organized society.* Wharton draws the same distinction, for he says: "Homicide in self-defence, or *se defendendo,* * * * is *excusable* rather than *justifiable.*" 1 Whart. on Crim. Law, sec. 135. "It is justifiable, not only when the proper officer executes a criminal in strict conformity with his sentence, but also when the officer, in the legal exercise of a particular duty, kills a person who resists or prevents him from executing it." Secs. 936–7. "Offi-

cers of the law, when engaged in the performance of their duties, are invested with a peculiar prerogative. If resisted when so employed, and the party resisting be killed in the struggle, such homicide is *justifiable.* And on the other hand, if the party having such authority be killed, it will be murder in all who take part in such resistance, though there be no malice." *Id.*, sec. 1030.

My associates cite Kelley in support of their position, but that author says : " The right of the officer in such case does not depend upon the principle of self-defence alone, *but upon the necessity of executing his duty."* Kelley Crim. Law, sec. 491. This is sufficient to condemn the fifth instruction, on which I have commented, for that expressly places the right of the officer to kill *solely and exclusively on the right of self-defence.* And Hale supports Kelley ; for speaking of officers making arrests, he says : "*For they are ministers of justice, and under a more special protection in the execution of their office than private persons."* 1 Hale P. C. 481 ; 2 *Ib.* 118. In *McKalley's case,* 9 Co. 63 *b,* it is said : " And it is true that the life of a man is much favored in law, but the life of the law itself ( which protects all in peace and safety), ought to be more favored, and the execution of the process of the law, and of the offices of conservators of the peace is *the soul and life of the law,* and the means by which justice is administered, and the peace of the realm kept. * * * It was resolved that the officer or minister of the law, in the execution of his office, if he be resisted or assaulted, is not bound to fly to the wall, etc., as other subjects are, for *legis minister non tenetur executione officii fugere seu retrocedere."*

Now if the officers, in the execution of their office, are under a "*more special protection of the law* than private persons," if in the performance of their duties they are "invested with a peculiar prerogative," *where,*

*when and how* do the *"special protection"* and *"peculiar prerogative"* assert themselves, if those officers, in killing a resister, have to rely on *self-defence, pure and simple?* Hale says of the officer . when he kills in making or attempting an arrest, "For, being by law authorized to arrest him, he is not bound to go back to the wall, as in common cases of *se defendendo, for the law is his protection."* 2 *Ib.* 118. And he does not say such killing is done *se defendendo,* but he says "if he kills the assailant *it is in law adjudged se defendendo."* 1 *Ib.* 481. The whole theory of self-defence is at war with the authority of an officer to make an arrest, (1) because the officer is, of necessity, the *aggressor ;* (2) he need not give back, but duty orders him *forward ;* (3) ."for the law is his protection;" (4) self-defence rests not on positive law, but is one of those rights retained by all when they enter organized society.

There may be, I grant, *some semblance* of self-defence in an officer killing his assailant, but this semblance is so mingled with the *"special protection"* given by law to the officer, that any instruction which ignores this latter element, as does the instruction under discussion, must needs be defective and erroneous. My views on this matter find apt illustration in *Garrett's case* (1 Winston. p. 144), Pearson, C. J., saying: "His honor charged '*the warrants in this case being for a misdemeanor, and not for felony, gave the prisoner, Garrett, no authority, or any of his numerous guard of eighteen men, all armed, to take away life by the use of a deadly weapon, in order to execute his warrants.'* We do not concur in the proposition of law which his honor here lays down. On the contrary, after mature reflection, we are satisfied, not only that it is erroneous, but would make the due administration of the law im-

practicable. * * * This conclusion is fully sustained by the necessity of 'preserving good order, and asserting the supremacy of the law,' as to make it unnecessary to cite cases.   In the execution of a state's warrant for treason, felony, or a *breach of the peace*, * * * the dwelling house (or castle, as it is called in the books) must be broken into, and everything done which is necessary in order to execute the warrant.   *In other words, resistance to the command of the state is not allowed.* The warrant must be executed, *peaceably if you can, forcibly if you must.*''   To the same effect as to justification of the officer resting on his · process of right to arrest, see *U. S. ex rel. Roberts v. Jailor*, 2 Abb. 265. ;

IV.   The fourth instruction on behalf of the state is incorrect, in that it does not define manslaughter in the fourth degree, under either section 1249 or 1250, Revised Statutes.   The definition would apply as well to section 1242, which treats of manslaughter in the second degree.

V.   And it will not do to say that any error in the fourth instruction was cured by the sixth instruction, which correctly defined manslaughter in the fourth degree, because it is impossible to tell which definition the jury adopted.   *State v. Simms*, 68 Mo. 305 ; *State v. Mitchell*, 64 Mo. 191.

VI.   The sixth instruction is erroneous because, while section 1251, Revised Statutes, fixes the minimum punishment of manslaughter in the fourth degree "by both a fine of not less than one hundred dollars, and im. prisonment in the county jail for not less than three months," the instruction in question places the lowest term at imprisonment at not less than six months.   *State v. Sands*, 77 Mo. 118.

VII.   Evidence of good character is always to be considered by the jury in making up their verdict as to the guilt or innocence of the accused, just like any other

fact in the cause; and no distinction is to be taken between evidence of fact and evidence of character. If all the other evidence taken by itself proves the prisoner guilty, the jury are not at liberty, for that reason, to fail to consider evidence of this character. *State v. Alexander*, 66 Mo. 148 ; Whart. on Crim. Evid., secs. 57, 58, 66. Ignoring, as it did, this principle, the ninth instruction for the state was impropper because it told the jury that " except under the plea of self-defence, the question of the character of the defendant was wholly immaterial:"

' VIII. The language of the twelfth instruction for the state, " a real substantial doubt," etc., is condemned in *State v. Owens*, 79 Mo. 619.

IX. There is no ground of exception in the remarks of counsel for the state in his closing argument. *State v. Zumbunson*, 86 Mo. 111 ; *State v. Emory*, 78 Mo. 77.

' For the errors aforesaid, the judgment is reversed and the cause remanded. All concur; Black, J., on all points ; Henry, C. J., and Norton, J., and Ray, J., specially.

' ⌊NORTON, J., DISSENTING.—I understand the law to be that, if an officer in making an arrest for a misdemeanor is resisted, he may apply force to accomplish the arrest, " and if it be necessary to kill the offender to save his own life or person from great bodily harm, he may do so." ' Sections 73 and 491, Kelly's Criminal Law, and authorities referred to as sustaining the proposition. 1 Hill (S. C.) 327.

While concurring in the judgment remanding the cause, I do not concur in so much of the opinion as may be construed to assert a different principle from that above stated. Henry, C. J., and Ray, J., concur in this opinion.