## PRUITT v. MILLER.

A reward was offered, by *Franklin* county, for the apprehension and delivery to the sheriff of said county, of one *E.*, who was charged with the crime of murder. One *M.* thereupon went to *New Orleans* in pursuit of *E.*, and arrested him and brought him back to the vicinity of said county. Here, by the negligence of *M.*, *E.* escaped. On the morning afterwards, *M.*, with others in his employ, watched a house where *E.* was supposed to be secreted, but did not find him. On the next morning, *M.* called on one *P.*, related to him the circumstances of his journey, his expenses, the arrest of *E.* and his escape, and requested the aid of *P.* to re-take *E.*, and promised *P.* to compensate him if he, *P.*, should arrest him. *P.* agreed to watch at said house for *E.*, take him if he should come there, and give *M.* notice of the arrest. *P.* said *M.* ought to have the reward. Meanwhile, *M.* continued his search for *E.* in the vicinity. *P.* arrested *E.* at said house, on the day after the conversation with *M.*, concealed from *M.* the fact, delivered *E.* to the sheriff of said county, and obtained the reward. In *assumpsit* by *M.* against *P.* to recover the reward, *held*, that *P.* was merely the servant of *M.* to make the arrest, and that the latter was entitled to the reward. *Held*, also, that no demand of the reward from *P.* was necessary before suit.

No plea of set-off, or notice of set-off, was filed in this cause. *Held*, that it would not have been competent, therefore, for the jury to have allowed *P.* compensation for making the arrest.

An opinion expressed by a witness, inconsistent with facts testified to by him, cannot be given in evidence to impeach his testimony.

A party employed merely to aid in making an arrest, has no implied authority to engage others, at his employer's expense, to assist.

A conviction of petit larceny does not render a person incompetent as a witness.

APPEAL from the *Franklin* Circuit Court.

PERKINS, J.—Assumpsit by *Russell Miller* against *William Pruitt* on a count for money had and received, &c. Plea, non assumpsit. Jury trial; verdict and judgment for the plaintiff, and new trial refused.

The facts of the case are substantially these: A reward of 200 dollars was offered, in *December*, 1850, by the county of *Franklin*, in this state, for the apprehension and delivery to the sheriff of said county of *Joseph Emsweller*, who was charged with the murder of *Chauncey Jenks*. *Russell Miller* thereupon went to *New Orleans* in pursuit of *Emsweller*, succeeded in arresting and bringing him on the way to *Franklin* county, as far as *Harrison*, a town near the eastern boundary of said county, and between it and *Cincinnati*, at which place, on *Thursday* night, *Emsweller*, through the carelessness of *Miller*, made his escape. *Friday* morning *Miller* came on to *Franklin* county, seeking aid to re-arrest him. *Emsweller's* wife lived with Mrs. *Stuttle*, on the farm of the defendant, *Pruitt*. *Miller*, with others whom he had procured to aid him, watched Mrs. *Stuttle's* house *Friday* night. *Emsweller* did not appear. On *Saturday* morning *Miller* called on *Pruitt*, related to him the circumstances of his journey to and from *New Orleans*, his heavy expenses, his arrest of *Emsweller*, the escape, &c., and solicited his aid in re-taking him. He told *Pruitt* if he would arrest *Emsweller* and let him, *Miller*, know, he would pay him well for it, and furnished him a pistol for safety. *Pruitt* agreed to watch for *Emsweller* at *Stuttle's*, take him if he should come there, and let *Miller* know. He said *Miller* ought to have the reward. In the meantime, *Miller* continued his search in the vicinity. *Emsweller* came to *Stuttle's* Saturday night, and, on *Sunday* morning, *Pruitt* arrested him there, but instead of informing *Miller* of the fact, he delivered *Emsweller* to the sheriff and claimed and received the reward of 200 dollars. This is a suit by *Miller* to recover that money from *Pruitt*.

It is contended, in behalf of *Pruitt*, that he arrested *Emsweller* on his own account, and delivered him to the sheriff, and thus became entitled to the reward offered, as his own property. But we think it plain enough that *Pruitt* made the arrest at the request and as the servant of *Miller*, and is entitled, not to the reward, but to a reasonable compensation for that service. *Miller* had ar-

*Nov. Term, 1851.*

PRUITT
v.
MILLER.

rested *Emsweller* and brought him far on the way to the place where he was to be delivered up; had somewhat carelessly perhaps, but not intentionally, suffered him to escape, and was following him in eager pursuit; gave *Pruitt*, who was not attempting, and, so far as appears, was not intending to attempt, the arrest on his own account, information how and where *Emsweller* had escaped and where he would be likely to be found; and obtained his promise that he would make the arrest at the place named, not elsewhere, on a promise of being paid for so doing. Had *Pruitt*, when applied to by *Miller*, declined to act in his behalf, *Miller* might, and probably would, have watched at *Stuttle's* and arrested *Emsweller* himself. But, relying on *Pruitt's* promise, he trusted that point to him, and it would certainly be against all equity, under the circumstances, now to suffer *Pruitt* to repudiate his promise and claim the arrest as made on his own account.

In the second place, it is claimed that if *Pruitt* was the servant or agent of *Miller* in making the arrest, then, before this suit could be instituted, it was necessary that there should be a demand by *Miller* on *Pruitt* for an accounting and an allowance, or an offer of an allowance, to him, out of the 200 dollars he had received, for his trouble, expenses, &c.

It is in general true that where an agent receives money belonging to his principal in the course of his agency, he is entitled to an accounting before he can be sued for the money, and may retain his expenses, &c. *English* v. *Devarro*, 5 Blackf. 588.—See Story on Agency, s. 350. But in this case, we think *Pruitt* did not receive this reward in the course of his agency for *Miller*, but rather as a wrong-doer. He was not employed to take *Emsweller* to *Brookville* and receive this money on his surrender to the sheriff; but only to arrest and detain him for *Miller*. If a man is employed simply to find a horse that is lost and bring him to the owner, and he find the horse, but instead of returning him to the owner, take him to the person to whom the owner may have sold him, and receive

the price, it would hardly be contended that he received that money in the course of his agency for the owner. It would be otherwise, were he furnished with the horse to sell. And as to the compensation to which *Pruitt* may be entitled for arresting *Emsweller*, it could not have been allowed by the jury in this case, had any amount been proved, which there was not, because there was no plea or notice of set-off filed.

We may remark here that a demand of the 200 dollars was made before suit brought. A bill of exceptions states that *James Hawthorn*, a witness for the plaintiff, testified that he went with *Miller* to the house of *Pruitt*, in *January*, then last, after they had been hunting *Emsweller*, and that *Miller* wished *Pruitt* to aid him in arresting said *Emsweller;* that the witness was then proceeding to state to the jury what *Miller* said to *Pruitt* at the time, relative to the arrest of *Emsweller* in *New Orleans*, his subsequent escape, &c., whereupon the defendant, *Pruitt*, objected to the witness making such statement, but the Court overruled the objection.

'That conversation was a part of the *res gestæ* and properly given in evidence.

The witness then detailed the conversation, and " proceeded further to say that *Pruitt* consented to arrest *Emsweller* if he could, and then to let *Miller* know of the arrest; that he said he would do right about the reward, that *Miller* ought to have it, &c.; whereupon the defendant, for the purpose of impeaching the witness, proposed to ask him if he had not, after that conversation, on the same day it occurred, told one *Thomas Guard* that *Emsweller* was at large, that whoever caught him would be entitled to the reward, and that *Miller* was no more entitled to it than any other person;" but the Court refused to permit the question to be asked. We think there was no error in this. The question was irrelevant. The witness had not testified to anything in regard to his own opinion. He had stated that a certain conversation took place between *Miller* and *Pruitt*. Now, the question proposed to be asked was, not whether he had told some

Nov. Term, 1851.

PRUITT
v.
MILLER.

person that no such conversation did take place, but whether, admitting the conversation to have taken place, he had not, in fact, given his opinion as to the legal question involved in the case. This was a matter wholly unimportant.

The bill of exceptions further states that the defendant offered to prove, by a competent witness, that he, *Pruitt*, after *Miller* had applied to him to arrest *Emsweller*, agreed with Mrs. *Emsweller* to give her 100 dollars and to *Emsweller* himself, 50 dollars of the reward, if she would let him know when *Emsweller* came home; but the Court would not permit the proof to be made.

This ruling could have done no harm. *Pruitt* had no authority to bind *Miller* by such a contract, even if he could bind himself, which we do not decide; but if he had had such authority, it was not pretended that *Pruitt* had paid the money, and hence it should not have been deducted in this suit. If *Miller* was bound by *Pruitt's* bargain to pay the money, the *Emswellers* might, and perhaps would, look directly to him for it.

*Emsweller* himself was made a witness by the defendant. The plaintiff objected to him as incompetent, because, in 1848, he had been convicted of petit larceny. This, however, is not a crime that renders a person, in law, infamous, and hence, does not render him incompetent as a witness. R. S. p. 999, s. 79, and p. 719, s. 261.

*Per Curiam.*—The judgment is affirmed, with 2 *per cent.* damages and costs.

*G. Holland*, for the appellant.

*J. D. Howland*, for the appellee.