RALLS COUNTY, Plaintiff, v. STEPHENS, Interpleader, Respondent; CARTER et al., Interpleaders, Appellants.

St. Louis Court of Appeals, January 19, 1904.

1. **REWARD:** Apprehension of Criminal. In a contest over a reward offered for the apprehension and conviction of a murderer, as between one who furnishes information pointing to the guilty party, and one who takes prompt and energetic measures and spends time and money to procure the arrest, and elicits a confession from the murderer, the latter is entitled to the reward.

2. ———: ———. And an officer who, without knowing that a reward is offered, actually makes the arrest, at the instance of one who spends time and money and takes prompt and energetic measures to apprehend the criminal, is not entitled to the reward as against the latter.

Appeal from Ralls Circuit Court.—*Hon. D. H. Eby,*
Judge.

AFFIRMED.

*John W. Bingham* and *Roy & Hays* for appellant.

(1) This statute gives no authority to offer reward
for conviction. The State of Missouri has never hun-
gered for the blood even of murderers to such an extent
as to offer a reward for their conviction. Thornton v.
Railroad, 42 Mo. App. 68. (2) Carter did not make
the arrest of Johnson as the agent of Stephens. The
murder was committed in Ralls county. The arrest was
made in the city of Milan, in Sullivan county, of which
city Carter was at the time marshal. Stephens was a
deputy sheriff of Monroe county. Both the murder and
the arrest were beyond his jurisdiction, he having no
jurisdiction beyond his county, except in a few special
statutory cases of which this is not one. Murfree on
Sheriffs, sec. 114. So that as to this arrest Stevens
was a private citizen. But Carter was marshal of
Milan, as such he was a conservator of the peace. See
Revised Statutes, secs. 5697, 5789, 5922. Bishop's
Criminal Procedure, vol. 1, sec. 181; Lovejoy v. Rail-
road, 53 Mo. App. 386; Juniata v. McDonald (Pa.), 15
Atl. Rep. 696; Everman v. Hyman (Ind.), 38 N. W.
1022; Reif v. Parge, 55 Wis. 496, 13 N. W. 493; Went-
worth v. Day, 3 Metc. 352; Drummond v. U. S., 35 Ct.
Cl. 356; Am. & Eng. Ency. of Law, vol. 21, p. 398; San-
derson v. Lane, 43 Mo. App. 158.

*J. O. Allison* and *W. T. Ragland* for respondent.

(1) The maxim, "*qui facit per alium, facit per se,*"
is peculiarly applicable in this case. The rule is well
established that one may perform the services for which
a reward is offered by agent or servant or the instru-

mentality of another. Am. and Eng. Ency. of Law (1 Ed.), vol. 21, p. 402; par. 9; Montgomery Co. v. Robinson, 85 Ill. 174; Pruitt v. Miller, 3 Ind. 16; Russell v. Stewart, 44 Vt. 170. (2) Interpleader Testerman is not entitled to the reward because he did not perform any of the services for which the reward was offered. Giving information that leads to the arrest of a criminal does not entitle one to a reward offered for his apprehension and arrest, for they are quite distinct things though one may have been in consequence of the other. Shuey v. U. S., 92 U. S. 73; Everman v. Hyman, 3 Ind. App. 459; Juniata Co. v. McDonald, 122 Pa. St. 115; Adair v. Cooper, 25 Tex. 548; Am. and Eng. Ency. Law (1 Ed.), vol. 21, p. 396. In any event Testerman is concluded by the judgment of the trial court, he not having appealed therefrom. (3) Appellant is not entitled to the reward: First. Because as already stated he was merely acting as the agent or servant of Stephens when he made the arrest. Second. Because he did not do anything to assist in bringing about the conviction of Johnson. He does not even assert that he did in his interplea, and for that reason his pleading does not state facts sufficient to constitute a cause of action and would not support a judgment in his favor. Third. At the time Carter arrested Johnson he did not know that a reward had been offered. This knowledge was essential to consummate a contract between him and Ralls county. Howland v. Lounds, 51 N. Y. 604; 10 Am. Rep. 654; Fitch v. Suedaker, 38 N. Y. 248; 97 Am. Dec. 791; Railroad v. Sebring, 16 Ill. App. 181; Ensminger v. Horn, 70 Ill. App. 605; Sanderson v. Lane, 43 Mo. App. 158.

GOODE, J.—These parties are in litigation over an award offered by Ralls county for the murderer of one of its citizens, Marcus D. McRae, who was slain and robbed on April 28, 1902. The cause was tried on an agreed statement of the facts; but as the recitals of that

statement are more elaborate than we care to copy in full, we will extract from it the important facts on which we rest our decision.

Stephens was deputy sheriff of Monroe county at the time stated, and resided in Monroe City, a short distance from the scene of the murder, which was in the northwest corner of Ralls county.   On May 1st, three days after the murder, William Testerman, who resided at Withers Mill, notified Stephens that a negro had gotten on a west-bound freight train at Withers Mill the morning following the day McRae was killed.   This information aroused a suspicion in the mind of Stephens that the negro referred to by Testerman was Jesse Johnson, whom he (Stephens) knew.   He interviewed the conductor of the freight train on which the negro had travelled, and from the description given by the conductor, became convinced that Johnson was the man. He also learned from the conductor that Johnson left the train at Brookfield.   Stephens knew of the reward that had been offered by Ralls county, and in order to apprehend Johnson, telephoned to the marshal at Brookfield a description of him, asked if such a man had been at Brookfield and received a reply that he had been there, but had left for Milan in Sullivan county. Thereupon Stephens telegraphed the marshal of Milan to arrest Johnson, giving a description of him.   The appellant George T. Carter was the marshal of Milan and in obedience to Stephens' telegram he made the arrest, notifying Stephens that he had done so by a telegram, the charge for which the latter paid.   Carter also received a fee of one dollar for the arrest.   When he made it he did not know what Johnson was wanted for, nor that a reward had been offered for the murderer of Mc-Rae.   While Stephens was on the train on his way to Brookfield, he received Carter's message that Johnson had been taken.   Carter turned Johnson over to Denbro, a secret service man in the employ of the Hannibal & St. Joseph Railway, who was in Milan on the day

of the capture, to be taken to Brookfield and delivered
to Stephens, as was done. Stephens in due time, sur-
rendered him to the sheriff of Ralls county; but while
Johnson was still in his custody, Stephens elicited from
him a confession of the murder of McRae which was
instrumental in securing his conviction. The reward
offered by the county court was "for the apprehension,
arrest and conviction" of the person guilty of McRae's
murder. Testerman, Carter and Stephens all claimed
the reward; but Testerman did not appeal from the
decision of the court below, which was in Stephens'
favor. Carter appealed and contends that on the agreed
facts he was entitled to the reward, inasmuch as he made
the arrest.

Who earned the reward? is the question; and on
reading the above recital of the material facts of the con-
troversy, one perceives that the meritorious claim is
that of the respondent, Stephens. He alone of the par-
ties, when he learned of the murder and the reward for
its perpetrator, became active and enterprising in en-
deavoring to effect a capture. He took prompt and
energetic measures, spent time and money, made a jour-
ney, sent telegrams and did what he could to bring the
criminal within the grasp of the law. Testerman, it is
true, furnished a little news, which started the activity
of Stephens; but Testerman's claim had no force, be-
cause he did not comply with the conditions of the offer
of the reward. Shuey v. U. S., 92 U. S. 73; Everman
v. Hyman, 3 Ind. App. 459; Juniata Co. v. McDonald,
122 Pa. St. 115; Adair v. Cooper, 25 Tex. 548; 21 Am.
and Eng. Ency. Law (1 Ed.), p. 396, note 1. He neither
pursued the offender, nor followed up his clue suffi-
ciently to satisfy himself that he suspected the right
man. Besides, his claim is not before us, as he sub-
mitted to the judgment against him.

Carter was the first to lay hands on Johnson after
the commission of the crime; but he did so as the agent,
or, one may say, the arm of Stephens. He acted en-

tirely for Stephens and by the latter's direction, without knowing what crime Johnson was wanted for, or that a reward had been offered for his apprehension. It is true, as argued by appellant's counsel, that it would have been appellant's duty as town marshal and an officer of the State, to make the arrest if he had known, or had good reason to suspect that Johnson was guilty of the crime. R. S. 1899, sec. 2468. But he neither knew the crime of which Johnson was guilty had been committed, nor had the slightest reason, except the intimation of Stephens' message, to believe Johnson guilty of any crime. A peace officer has no right to arrest a citizen on mere whim or caprice, or without good ground for suspecting he has committed a felony. If he acts without a warrant, it must be upon reasonable suspicion. State v. Grant, 76 Mo. 236; Id., 79 Mo. 113. It follows that there is no merit in the argument that, because Carter was city marshal of Milan, it was his duty to arrest Johnson and that he is, therefore, entitled to the reward, as having made the arrest as marshal instead of as Stephens' agent. It is plain he acted as Stephens' agent and in obedience to the latter's direction. In sending a message at Stephens' cost announcing the arrest, Carter showed that he understood he had no duty to perform except to act on Stephens' suggestion, keep the latter advised and observe his orders. Then, too, he did not retain his captive, but forthwith surrendered him to Denbro for Stephens, with the understanding that Denbro would convey him to Brookfield, and turn him over to Stephens; which was tantamount to recognizing Johnson to be Stephens' prisoner. The hue and cry for McRae's murderer rendered it proper for Stephens to pursue him. R. S. 1899, sec. 2466. Having learned who the murderer probably was and where he was, it became Stephens' duty to have him seized at once in the surest way possible, before he absconded. To perform this duty Stephens promptly telegraphed to the marshal of

Milan, where he knew Johnson to be, to take him into custody. This was as much an arrest by Stephens, so far as entitling him to the reward is concerned, as if he had personally laid hands on Johnson and actually captured him; for an arrest may be made in such circumstances by an agent. 21 Am. and Eng. Ency. Law (1 Ed.), 402; Montgomery Co. v. Robinson, 85 Ill. 174; Pruitt v. Miller, 3 Ind. 16; Russell v. Stewart, 44 Vt. 170. When Carter made the arrest he did so in obedience to Stephens' order and with no knowledge whatever of the cause for it; so we think the arrest, while technically by Carter, was, for the purpose of earning the reward, by Stephens, who was the immediate cause of it. Crashaw v. City of Roxbury, 7 Gray 374; Jenkins v. Kelren, 12 Gray 330; Besse v. Dyer, 9 Allen 151; Stevens v. Brooks, 2 Bush. (Ky.) 137; Brennan v. Haff, 1 Hilton (N. Y. C. P.) 151. To order this money paid to Carter would be to ignore all the effective work that was done to accomplish the capture of Johnson and give weight to nothing but the incident of Carter's putting his hand out and taking him; taking him blindly at the suggestion of one who had developed the evidence pointing to his guilt, discovered his whereabouts and knew the truth. That person in the real sense of the word, "apprehended" the criminal and deserved to be rewarded.

No point is made in respect to the doctrine of the law which denies rewards to officers on grounds of public policy, and we have not considered the case in that light.

The judgment of the court below was for the right party and is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.