# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 15, 2025 Session

## JEFF HURST v. CITY OF MORRISTOWN

**Appeal from the Circuit Court for Hamblen County**
**No. 21CV047          William Erwin Phillips, II, Judge**

_____

**No. E2024-00779-COA-R3-CV**
_____

This is a Governmental Tort Liability Act ("GTLA") case, Tennessee Code Annotated section 29-20-101, *et seq.*, alleging negligent operation of a street sweeper by a city employee. The trial court denied the city's claims of immunity and entered judgment after a nonjury trial, apportioning 51 percent fault to the city's employee who was driving the street sweeper and 49 percent fault to the driver of the pickup truck that was involved in a collision with the sweeper. The city appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Benjamin K. Lauderback, Knoxville, Tennessee, for the appellant, City of Morristown.

W. Lewis Jenkins, Jr., Dyersburg, Tennessee, and F. Braxton Terry, T. Dillon Parker, and Gabriel C. Stapleton, Morristown, Tennessee, for the appellee, Jeff Hurst.

## OPINION

### I. BACKGROUND

Around 10:00 a.m. on March 8, 2021, on four-lane East Morris Boulevard ("Highway") in Morristown, Tennessee ("City"), Jeff Kimbrough ("Employee"), was operating a street sweeper ("Sweeper") going about five to eight miles per hour ("mph"). It was the first time the road in question had been swept in 2021. According to Employee, before he began work that morning he reviewed, cleaned, and confirmed the Sweeper's light systems were working. Employee noted that no less than twelve of the lights on the

back of the Sweeper were turned on, including two flashing lights on each of the upper corners, a strobe light, a LED light bar, two flashing lights on the lower rear bumper, and two white lights mounted along the bumper. Employee, who had operated the Sweeper for the City since 2001, had never before been involved in any accident.

As Employee was moving along the Highway during this same time period, Charles Hurst ("Driver"), 87 years old, suddenly crashed his 2001 Chevrolet S-10 truck into the rear of the Sweeper. Driver was traveling at approximately 40 mph, the posted speed limit. No skid marks were left by the truck. Driver suffered a right open femur fracture, as well as other injuries (broken in multiple segments and moved two or three widths from itself), right L1 and bilateral L2 transverse process fractures, a broken rib, a separated rib, and abdominal bleeding. Driver later passed away when he could not overcome the injuries he sustained in the crash.

Upon Driver's son arriving on the scene shortly after the accident, Driver declared: "I don't know what happened, I hit something, but I never saw a thing. I never saw one thing." Driver was transported by ambulance from the site of the accident to the Emergency Department at Morristown Hamblen Hospital. There, Driver informed the investigating officer:

> I didn't know I hit it 'til I'd done hit it. I didn't see it, I just didn't see it. I don't know. I can't figure out why I didn't see him. I hit him and I saw the windshield broke. I didn't know what I hit to tell you the truth.

Driver was transferred to the University of Tennessee ("UT") Medical Center in Knoxville that same evening because he had "poly trauma" that required a higher level of care. Dr. Kostas Triantafillou, an orthopedic surgeon noted:

> [A]ny time bone comes out through the skin, skin is - or bone is a living tissue. It's like a tree, it needs roots to survive, so the more the bone comes out through the skin, the more you're pulling the tree out from its roots and the higher the chance that tree will die.

**** 

> In this case, he had a high grade injury because for the thigh bone to come out through the, the skin, it has to travel a huge distance to get out through that skin as opposed, to breaking your shin bone, which is right underneath the skin and the thigh bone, . . . so even when we repair them, we know a portion of bone can die and get infected . . . if it doesn't have blood flow. . . . So, this is a high grade injury because it's a broken thigh bone coming out through the skin and, that alerts us and in future treatment plans that if something's not quite going right to have a high suspicion that something

could be complicated with an infection, for example.

This lawsuit was initially filed by Driver on May 14, 2021. Driver's son, Jeff Hurst ("Son"), became the party plaintiff upon Driver's death.[1] Son asserts in this action that the City was negligent for the following reasons: (1) Employee failed to activate the water jets or spray bars on the Sweeper, which would have prevented the Sweeper from becoming obscured to approaching motorists; (2) the Sweeper was not equipped with appropriate lighting to warn approaching motorists of the Sweeper's presence and slow speed, as required by the Manual on Uniform Traffic Control Devices ("MUTCD") and Tennessee Code Annotated section 55-8-190;[2] and (3) the Sweeper was operating at a slow speed that violated Tennessee Code Annotated section 55-8-154[3] and created a hazardous condition.

At trial, Son's expert testified that a sweeper creates dust because it pushes air onto the road surface at "about 250 miles an hour," which agitates the dirt and grime on the road. The expert related that it is well known in the street sweeping industry that dust "can obscure the sweeper." Employee himself stated immediately after the crash to an investigating officer and a supervisor that Driver possibly had difficulty in seeing the Sweeper because it had been "kicking up" a lot of dust. [4] The Sweeper in this case had seven spray bars mounted under the front bumper with jet nozzles to spray water on the surface of the street to help prevent dust from "getting airborne" and to reduce the amount of dust created by the operation of the Sweeper. In this case, however, Employee had not engaged the spray bars.

A focus at trial was the MUTCD, which provides, in pertinent part, as follows:

Mobile operations shall have appropriate devices on the equipment (that is,

---

[1] On September 28, 2021, a "Suggestion of Death" was filed for Driver that indicated he passed away on September 22, 2021. A subsequent agreed order was entered on October 12, 2021 that allowed for the substitution of Son as the plaintiff.

[2] Section 55-8-190(c) provides as follows:

(c) Absent noncompliance with this section, operator negligence or an intentional tort by an operator, operations of a street sweeper in compliance with this section shall not be a violation of law, and shall not subject the street sweeper to liability for claims for personal injury, property damage or death.

[3] Section 55-8-154. Minimum speed limits.
(a) No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law.

[4] A video excerpt of body camera footage from the scene of the crash captured Employee talking about the dust created by the Sweeper on the day of the incident and was key evidence underlying the trial court's finding that Employee lacked credibility on this point.

high-intensity rotating, flashing, oscillating, or strobe lights, signs, or special lighting), or shall use a separate vehicle with appropriate warning devices.

Based upon their arguments at trial, all parties accepted that street sweeping is a "mobile" operation for the purpose of the MUTCD. The evidence revealed that the Sweeper was not equipped with "high intensity" lighting. None of the lights on the vehicle constituted "special lighting" under the MUTCD. It is undisputed that there was no "separate vehicle" following behind the Sweeper.

On May 3, 2024, the trial court issued a memorandum opinion finding the City liable because the Sweeper was operated negligently by the Employee and, thus, created a dangerous condition that contributed to the accident. It found that the City was 51 percent at fault and the Driver was 49 percent at fault. The court held the negligent acts committed by the City included: traveling below the minimum speed limit without an exemption allowing it to lawfully do so pursuant to Tennessee Code Annotated section 55-8-190; water spray jets not in use that resulted in the Sweeper "kicking up a lot of dust," which "likely" obscured the visibility of the Sweeper to approaching motorists; and that the plan for operation of the Sweeper was flawed because it did not implement the safety precautions in the MUTCD, *i.e.*, the use of a shadow vehicle equipped with an arrow board or warning sign and the placement of warning signs along the roadway which MUTCD states "should" have been used in "typical" situations.

## II. ISSUES

The issues presented by the City on appeal are restated as follows:

1. Whether the trial court erred by finding the City breached a duty of care owed, established by, and pursuant to the MUTCD, and, if so, whether the breach of that duty was a cause in fact of the accident at issue, and, even if so, whether the court correctly assigned less than 50 percent of the fault to the Son pursuant to the doctrine of modified comparative fault?

2. Whether the trial court erred by holding that the decision of the City to outfit the Sweeper with the lighting it did and by failing to implement "guidance" recommendations from the MUTCD for mobile operations were "operational" decisions versus "planning" decisions, thus improperly denying the City immunity pursuant to the discretionary function exception under the GTLA as found at Tennessee Code Annotated section 29-20-205(2)?

3. Whether the trial court erred by finding that the City is not entitled to immunity under the Public Duty Doctrine despite the Son failing to plead or

prove a special duty of care was owed Driver by the City through the operation of the Sweeper as opposed to the general public?

4. Whether the trial court erred by failing to dismiss this case against City pursuant to Tennessee Code Annotated section 55-8-190, which, the City submits, specifically excludes liability for the operation of a street sweeper under the facts established at trial?

5. Whether the trial court erred by failing to grant the City's Rule 41.02 Motion for involuntary dismissal at the close of Son's proof or at the close of all proof on any of the following grounds: that the Son failed to prove more than 50 percent of the fault should be assigned to the City; that the City failed to comply with the MUTCD; or that the City was not entitled to discretionary function immunity under GTLA immunity under the Public Duty Doctrine and/or immunity pursuant to Tennessee Code Annotated section 55-8-190?

The issues presented by Son on appeal are as follows:

1. A defense provided by Tennessee Code Annotated section 55-8-190 must be pleaded or it is waived, and the failure to plead the defense in the present case resulted in its waiver.

2. Under the "obvious and routine" rule for medical special damages, the trial court should have awarded as additional damages the medical expenses from the initial hospital treatment and stay at UT Medical Center: hospital-based treatment for an open femur fracture is obvious and routine enough to be compensated without specific expert proof of necessity.

## III. STANDARD OF REVIEW

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W. 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). The trial court's determination's regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and

- 5 -

convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

Review of a trial court's ruling on a motion for involuntary dismissal under Rule 41.02(2) of the Tennessee Rules of Civil Procedure is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007). When reviewing a decision on a motion for involuntary dismissal, the trial court's factual findings are reviewed *de novo* with a presumption of correctness. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). The court's legal conclusions are reviewed *de novo* with no presumption of correctness. *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017).

# IV. DISCUSSION

## A. Negligence

The negligence claims raised by Son require the following elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). As noted by the trial court in this case:

> If a defendant does owe a plaintiff a duty of care, the trier of fact must answer whether the defendant exercised *reasonable* care in light of the circumstances specific to that case. "[T]he term reasonable care must be given meaning in relation to the circumstances. Ordinary or reasonable, care is to be estimated by the risk entailed through probable damages attending the particular situation and is to be commensurate with the risk of injury." [*Owings v. Owings*, 661 S.W.3d 141,] 146 [(Tenn. Ct. App. 2022)]; *quoting Doe v. Linder Const. Co., Inc.*, 45 S.W.2d 173, 178 (Tenn. 1992). The singular fact that an accident or injury occurred does not necessarily mean that a defendant breached his duty of car or was negligent.

The City raised the affirmative defense of comparative fault, contending that Driver's negligent operation of his own vehicle contributed to the crash. The City also asserts that the evidence preponderates against a finding that a cloud of dust existed at the scene and contributed to the accident. The City maintains that even if there was a breach of duty of care owed through the failure to use water jets, the breach did not create dust or visual obstruction. According to the City, it complied with the specialized lighting requirements of the MUTCD, meaning it had a lawful right to travel at a reduced speed.

The trial court found at least three acts of negligence by the City, holding as follows:

Defendant's negligent operation of the street sweeper created a dangerous condition which substantially contributed to the accident, and without which the accident would not have occurred. The sweeper was traveling below the minimum speed limit, 7 mph on a four-lane highway with a speed limit of 40 mph. The sweeper was excepted from its exemption to travel at a minimum speed and from liability per Tenn. Code Ann. § 55-8-190(b), as it was not being operated in compliance with the National Highway Administration's MUTCD.[5] Per the operator's own admission, the sweeper was "kicking up a lot of dust," which likely obscured the visibility of approaching motorists. The sweeper was also being operated without implementing those safety precautions which the MUTCD states "should" be used in "typical" situations, i.e. the use of a shadow vehicle equipped with an arrow board or warning sign, and the placement of warning signs along the roadway. The fact that said safety precautions exist for mobile operation establishes that it is reasonably foreseeable that an injury may occur if they are not implemented. Therefore, Defendant's negligent operation of the street sweeper was both a cause in fact and legal cause of the injury sustained by Mr. Hurst.

Employee admitted that the water jets were not engaged on the date of the incident. At trial, he initially testified that he was not using the water jets on the day of the incident because it "wasn't dusty." However, upon being shown the body camera video showing him admitting that he was "kicking up a lot of dust," he acknowledged that it was dusty. Employee declared:

Mr. Terry: So you indicated that was a big factor — or the reason … the accident could have happened was because of the dust?

Employee: Yes

The trial court expressly found Employee's testimony on the dust issue at trial to be non-credible and found his statement to an officer in the immediate aftermath of the crash to be important. The evidence supports the determination of the trial court finding that Employee's failure to activate the water jets was a negligent act.

As to the next negligent acts, the trial court found that the Sweeper was operated at

---

[5] Section 55-8-190(b) provides as follows:

(b) If operated in compliance with the national highway traffic safety administration standards, . . . a street sweeper may . . . travel at a speed below the lawful minimum speed . . . .

about seven mph or less in a 40 mph speed limit area without sufficiently warning approaching motorists. As noted by the trial court, mobile operations, Section 6G.02 of the MUTCD, provides in pertinent part:

> Support: Mobile operations also include work activities where workers and equipment move along the road without stopping, usually at slow speeds. The advance warning area moves with the work area.
>
> *Guidance: When mobile operations are being performed, a shadow vehicle equipped with an arrow board or a sign should follow the work vehicle, especially when vehicular traffic speeds or volumes are high. Where feasible, warning signs should be placed along the roadway and moved periodically as work progresses.*
>
> *Under high-volume conditions, consideration should be given to scheduling mobile operations work during off-peak hours.*
>
> *If there are mobile operations on a high-speed travel lane of a multi-lane divided highway, arrow boards should be used.*
>
> **Standard: Mobile operations shall have appropriate devices on the equipment (that is, high-intensity rotating, flashing, oscillating, or strobe lights, signs, or special lighting), or shall use a separate vehicle with appropriate warning devices.**

MUTCD Section 6G.02, 18-22 (emphasis in original).

The trial court found that the Sweeper was not equipped with any high intensity lights or signs. Additionally, the court observed that no separate vehicle was employed to warn motorists of the slow-moving Sweeper. As stated by the court, "[a]bsent such adequate lighting on the equipment in use, a separate vehicle with appropriate warning devices should be used." The court also observed that there was nothing about the Highway "that would render placing warning signs along the roadway *unfeasible*." Thus, the court found that the Sweeper "was not being operated in compliance with the MUTCD."

The City argues the trial court erred in focusing too greatly on MUTCD "guidance" or options to support its rulings, rather than the mandatory requirements or "standards" that do not allow for "discretion" about whether to implement. The City maintains that the lighting on the Sweeper was consistent with the MUTCD requirements. The trial court observed, however, that it used the MUTCD not as a standard, but rather as guidance in determining the foreseeability of danger created by the slowly moving Sweeper. The court stated:

[T]he MUTCD mandatory "standards" are not the standard by which this Court determines whether Defendant's operation of the street sweeper was negligent. The question is whether Defendant used reasonable care in its operation of the sweeper in relation to the circumstances as they existed at that time and location of the accident.

The trial court thereafter concluded:

To be clear, the Court does not find that the lack of adequate lighting was a significant contributing factor to the accident, which occurred at approximately 11:00 a.m. on a sunny and clear March morning. Rather, the significance of the Court's finding regarding the lack of adequate lighting per the MUTCD is that it removes Defendant from the exception to liability, and the exception to travel below the speed limit provided by Tenn. Code Ann. § 55-8-190.

We conclude the evidence of record supports the trial court's finding that the City's conduct fell below a reasonable standard of care. As indicated by the trial court, "[t]he fact that said precautions exist for mobile operations establishes that it is reasonably foreseeable that an injury may occur if they are not implemented." The City owed Driver a duty to exercise reasonable care in its operation of the Sweeper in the circumstances then and there existing. *See generally West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005) ("If a defendant fails to exercise reasonable care under the circumstances, then he or she has breached his or her duty to the plaintiffs. The term reasonable care must be given meaning in relation to the circumstances.") *Cf.* Tenn. Code Ann. § 55-8-136. Accordingly, we find that the evidence supports the trial court's determination that the negligent operation of the Sweeper was both a cause in fact and legal cause of Driver's injury.

As the trial court found in its memorandum opinion, Driver's negligent operation of his vehicle "was also a substantial contributing factor to the collision, without which his injury would not have occurred." The court specifically held as follows:

Mr. Hurst did not exercise due care, he did not maintain a safe look out, he did not devote his full time and attention to operating the vehicle, and he did not observe what was there to be seen. The fact that he did not brake or otherwise attempt to avoid the collision supports this unavoidable conclusion. It is indisputably foreseeable that one's failure to maintain a proper lookout while operating an automobile may result in accident and injury. Still, while Mr. Hurst's inattention cannot be excused, the safety precautions prescribed by the MUTCD seem to exist to guard against driver inattention, or to ensure driver attention, especially when "the normal function of the roadway . . . is suspended[;]" creating a hazardous situation. MUTCD Section 6A.01, 03. Accordingly, the Court finds that Mr. Hurst is

49% at fault for the accident, and Defendant is 51% at fault.

Upon our review, we find that a preponderance of the evidence supports the trial court's determination as to the negligence of the parties.

## B. Immunity

GTLA, Tennessee Code Annotated section 29-20-101, *et seq.*, the statute that effects a waiver of immunity for certain acts of negligence by local governmental units that would otherwise have sovereign immunity, states, in relevant part:

> Immunity from suit of all governmental entities is removed for injuries resulting from the negligent operation by any employee of a motor vehicle or other equipment while in the scope of employment.

Tenn. Code Ann. § 29-20-202(a). As noted by the trial court, "before holding a governmental entity liable for damages, [a court] must first determine that the employee's or employees' acts were negligent and the proximate cause of plaintiff's injury, that the employee or employees acted in the scope of their employment and that none of the exceptions listed in § 29-20-205 are applicable to the facts before the Court." Tenn. Code Ann. § 29-20-310(a). Here, no dispute exists that Employee was operating the "motor vehicle or other equipment while in the scope of employment."

The City argues that the trial court erred when it failed to find immunity attached to the City on any of three separate grounds: 1) The plan put in place by the City and executed by Employee with regard to street sweeping activities entitles the City to discretionary function immunity as is described in the GTLA; 2) If discretionary function immunity does not apply, then the Public Duty Doctrine does and entitles the City to immunity; and/or 3) The City is immune pursuant to Tennessee Code Annotated section 55-8-190, which waves liability for the operation of a street sweeper, so long as the operation of it complies with "the national highway safety manual," which all parties and the court concede is the MUTCD. *See Russell v. Anderson Co.*, No. E2010-00189-COA-R3-CV, 2011 WL 486900, at *2, n.4 (Tenn. Ct. App. Feb. 11, 2011).

### Discretionary Function Immunity

To determine whether a governmental entity is entitled to immunity for a discretionary decision, we apply the "planning-operational test." *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn. 1992). As noted in *Giggers v. Memphis Hous. Auth.*, 363 S.W.3d 500, 507 (Tenn. 2012), "[a] governmental entity is immune from suit for actions involving 'planning or policy-making.'" *Helton v. Knox Cnty.*, 922 S.W.2d 877, 885 (Tenn. 1996) (quoting *Bowers*, 826 S.W.2d at 430). "When the act is merely 'operational,' the entity is not immune." *Id.* The *Giggers* Court observed as follows:

In *Bowers*, we determined that a planning decision usually involves consideration and debate regarding a particular course of action by those charged with formulating plans or policies. *Bowers*, 826 S.W.2d at 431; *see also Helton*, 922 S.W.2d at 885. A planning decision frequently requires a governmental entity to create policies or plans, formulate specifications or schedules, allocate resources, or determine priorities. *Bowers*, 826 S.W.2d at 431. Planning or policy-making decisions are not subject to tort liability, and a review of these decisions requires judicial restraint. *Limbaugh [v. Coffee Med. Ctr.]*, 59 S.W.3d [73,] 85 [Tenn. 2001].

Operational decisions, however, implement "preexisting laws, regulations, policies, or standards" that are designed to guide the actions of the governmental entity. *Bowers*, 826 S.W.2d at 431. An operational decision requires that the decision-maker act reasonably when implementing preexisting policy. *Limbaugh*, 59 S.W.3d at 85. Unlike a planning or policy-making decision, an operational decision does not involve the formulation of new policy.

*Giggers*, 363 S.W.3d at 507-508.

On the issue of discretionary versus operational, the trial court in the instant case held as follows:

While Defendant moved the Court to dismiss Plaintiff's cause of action on discretionary function immunity, neither Defendant nor Plaintiff articulated with any specificity, or referred to any facts, as to why the Court should consider the operation of the sweeper discretionary or operational. The Court concludes, however, that Defendant's operation of the street sweeper was an operational act. It is important to clarify that the Court considers the implementation of the safety protocols established by the MUTCD as part and parcel of the operation of the sweeper. Defendant's employee(s) made the decision to operate the street sweeper on East Morris Blvd. beginning at approximately 10:00 a.m. on March 8, 2021. The sweeper's operation did not comply with the preexisting laws, regulations, and standards specifically designed to guide mobile operations in typical situations.

Upon our review, we find that the record contains no basis upon which to reverse the trial court's ruling. The evidence supports the determination of the court that the City is not entitled to discretionary immunity.

**Public Duty Doctrine**

The City asserts entitlement to immunity under the Public Duty Doctrine, which "provide[s] an additional layer of defense to acts or omissions not immune under the GTLA." *Matthews v. Pickett Cnty.*, 996 S.W.2d 162, 165 (Tenn. 1999). It "shields governmental entities and their employees from 'suits for injuries that are caused by the … breach of a duty owed to the public at large.'" *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 60 (Tenn. 2023) (quoting *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995)).

The trial court determined that with the express waiver of sovereign immunity in Tennessee Code Annotated section 29-20-202 for negligent operation of vehicles, "[t]he General Assembly expressed its clear intent to limit scope of the public duty doctrine by removing immunity for certain claims," such as the one before us. The court found that the doctrine does not apply here because the Employee negligently operated the Sweeper by not implementing safety protocols under the MUTCD. The court held:

> If the Court were to allow the public duty doctrine to trump § 29-20-202, as Defendant argues, this would nullify the clear intent of the General Assembly and render its enactment useless and an absurdity. *See Lawson v. Maryville City Schools*, 202 WL 7391151, *5 (Tenn. App. 2020). It is important to be clear: the Court finds that the implementation of the safety protocols set forth for typical mobile operations in the MUTCD is attendant to, and a necessary part of, Defendant's operation of the street sweeper, such that they are one and the same. Accordingly, the Court finds that the public duty doctrine does not apply to Plaintiff's cause of action, particularly in light of the proof presented at trial.

Under the unique facts of this case, we find that the evidence supports the trial court's ruling regarding the inapplicability of the public duty doctrine. This court must "presume that the General Assembly did not intend to enact a useless statute . . . ." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010) (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

**Tennessee Code Annotated section 55-8-190(c) Immunity**

Section 55-8-190 provides a limited grant of immunity from criminal and civil liability in subsection (c):

> Absent noncompliance with this section, operator negligence or an intentional tort by an operator, operation of a street sweeper in compliance with this section shall not be a violation of law, and shall not subject the street sweeper to liability for claims for personal injury, property damage or death.

Tenn. Code Ann. § 55-8-190(c).[6]

A grant of immunity such as the one in section 55-8-190 must be construed "strictly" and confined "to its 'express terms.'" *Welch v. Oaktree Health & Rehab. Ctr. LLC*, 674 S.W.3d 881, 894 (Tenn. 2023). The trial court observed in its findings that "the significance of the court's finding regarding the lack of adequate lighting per the MUTCD is that it removes Defendant from the exception to liability, and the exception to travel below the speed limit provided by Tenn. Code Ann. § 55-8-190." Thus, the finding of negligent acts precludes the applicability of Tennessee Code Annotated section 55-8-190 in the present case.

Furthermore, for all the reasons provided above, we find the trial court properly denied the City's motion for involuntary dismissal.

As to the issue of damages, the trial court noted as follows:

**D. DAMAGES**

Our Supreme Court has succinctly stated:

A person who is injured by another's negligence may recover damages from the other person for all past, present, and prospective harm. An award of damages, which is intended to make a plaintiff whole, compensates the plaintiff for damage or injury caused by a defendant's wrongful conduct. The party seeking damages has the burden of proving them.

A plaintiff who is injured by another's negligence is entitled to recover two types of damages: economic (or pecuniary) damages and non-economic (or personal) damages. Economic damages include past medical expenses, future medical expenses, lost wages, and lost earning potential. A plaintiff may seek recovery for all economic losses that naturally result from the defendant's wrongful conduct.

Non-economic damages include pain and suffering, permanent impairment and/or disfigurement and loss of enjoyment of life. Non-economic damages are often highly subjective and are not susceptible to proof by a specific dollar amount. While there must be some evidence to justify the amount awarded, plaintiffs are not required to prove the monetary value of non-economic damages because such injuries are not easily quantified in

_____

[6] Sovereign immunity has been waived for negligent operation of motor vehicles, including a street sweeper vehicle, under Tennessee Code Annotated section 29-20-202(a).

- 13 -

economic terms. For this reason, the trier of fact is given broad latitude in fixing the monetary amount of non-economic damages.

*Dedmon v. Steelman*, 535 S.W.3d 431, 437-38 (Tenn. 2017) (internal citations and quotations omitted).

**1. Medical Expenses**

In order to recover past medical expenses, "a plaintiff must prove that the medical bills paid or accrued because of the defendant's negligence were both necessary and reasonable." *Id.* at 438 (internal quotations and citations omitted). Typically, proof of necessity and reasonableness must be established by expert testimony. A treating physician or physician familiar with the treatment the plaintiff has received may give an expert opinion regarding the reasonableness and necessity of the medical bills. *Id.* Under certain circumstances, Tenn. Code Ann. § 24-5-113 provides a statutory mechanism to create a rebuttable presumption that the elements necessary to recover past medical expenses have been established.

For small claims, subsection (a) of said statute provides for a rebuttable presumption that medical bills of $4,000 or less that are itemized and attached to the complaint create a *prima facie* presumption that the bills are both necessary and reasonable. Subsection (b) of the same statute sets forth another procedure to create a rebuttable presumption of the reasonableness (but not the necessity) of the plaintiff's medical bills. The presumption of reasonableness in subsection (b) can apply to medical expense claims of any size. *Id.* at 439. Our Supreme Court has observed:

As is apparent from the statutory language, the presumption statute establishes two different presumptions. Compliance with subsection (a) of Section 24-5-113 creates a presumption of both necessity and reasonableness. In contrast, compliance with subsection (b) of Section 24-5-113 creates a presumption only that the medical bills are reasonable.

*Id.* (emphasis in original) (citations omitted). Thus, when relying on subsection (b), a plaintiff must still establish by competent expert testimony that the medical bills incurred were necessary.

The only evidence Plaintiff introduced at trial regarding Mr. Hurst's medical expenses was . . . a previous court filing of October 13, 2023 titled Plaintiff's Itemization of Medical Bills Pursuant to Tennessee Code Annotated § 24-5-113(b). Attached to the court filing . . . is a one-page, cursory itemization of medical bills purported to have been incurred by Mr.

Hurst totaling $273,579.79. No medical bills or other medical records were attached to the exhibit/filing, and none were otherwise introduced into evidence at trial. Still, it appears upon the exhibit's face that the itemization was served upon Defendant at least 90 days prior to trial, and Plaintiff is entitled to a rebuttable presumption that the itemized medical bills are *reasonable*. Even so, Plaintiff still bears the burden of proving that Mr. Hurst's medical bills were *necessary*.

The depositions of Dr. Witherspoon[7] and Dr. Triantafillou, two of Mr. Hurst's treating physicians, were introduced at trial. The Court's careful reading of the depositions reveals that neither doctor reviewed any medical bills or itemization of medical bills, nor did either doctor offer an opinion regarding the necessity of any of Mr. Hurst's medical bills because Plaintiff did not elicit any testimony about medical expenses during their deposition. Put simply, there is no expert testimony regarding the necessity of Mr. Hurst's medical bills as reflected on the itemization because no expert ever reviewed the bills or any other tabulation of the expenses. *See Holzmer v. Estate of Walsh*, 2023 WL 4836691, *5 (Tenn. App. 2023). A review of the exhibits introduced during each deposition, and attached thereto, reveals that neither the itemization nor any actual medical bills were reviewed by the deponents or made exhibits to the depositions. The Court of Appeals has recently addressed this very issue, holding:

[E]ven when a plaintiff is entitled to the statutory rebuttable presumption of reasonableness of medical expenses, there is no presumption regarding the necessity of the care and expenses described in the bills. Distilling and applying these principles, we find that the trial court did not abuse its discretion in excluding Plaintiff's medical bills because there was no expert testimony on the necessity of the expenses. It was Plaintiff's burden to prove that her medical expenses were necessary.

*Id.* at *6-7 (emphasis in original). Moreover, in the instant action, there are no actual medical bills in evidence for the trier of fact to independently review. Accordingly, the Court excludes Plaintiff's itemization of medical bills from consideration. There was no other evidence introduced at trial regarding any other economic damages sustained by Mr. Hurst. Plaintiff, therefore, is awarded no economic damages.

Regarding the requisite proof to establish medical expenses, our Supreme Court has explained, in pertinent part, as follows:

---

[7] Nancy Witherspoon, D.O., was the medical director and attending physician at Life Care Center of Jefferson City, where Driver resided prior to his death.

[A] plaintiff must prove that the medical bills paid or accrued because of the defendant's negligence were both "necessary and reasonable." *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009) (citing 22 Am. Jur. 2d *Damages* § 166 (2003 & Westlaw 2008); 25 C.J.S. *Damages* § 259 (2002 & Westlaw 2008)); *see West* [*v. Shelby County Healthcare Corp.*], 459 S.W.3d at 44 [(Tenn. 2014)] ("[R]ecoveries for medical expenses in personal injury cases are limited to those expenses that are 'reasonable and necessary.'"). "In all but the most obvious and routine cases, plaintiffs must present competent expert testimony to meet this burden of proof." *Borner*, 284 S.W.3d at 218. "A physician who is familiar with the extent and nature of the medical treatment a party has received may give an opinion concerning the necessity of another physician's services and the reasonableness of the charges." *Long v. Mattingly*, 797 S.W.2d 889, 893 (Tenn. Ct. App. 1990) (citing *Emp'rs. Ins. of Wausau v. Carter*, 522 S.W.2d 174, 176 (Tenn. 1975)). "To be qualified to render these opinions, the physician must first demonstrate (1) knowledge of the party's condition, (2) knowledge of the treatment the party received, (3) knowledge of the customary treatment options for the condition in the medical community where the treatment was rendered, and (4) knowledge of the customary charges for the treatment." *Id.*

*Dedmon*, 535 S.W.3d at 438.

In the record before us, the trial court correctly noted that no medical bills or medical records were attached to Son's itemization of medical bills. No medical bills or medical records were introduced into evidence at trial to even allow the trier of fact to independently review them. Neither doctor deposed in the case reviewed any medical bills or itemization of medical bills, nor did either physician offer an opinion as to the necessity of the Driver's medical bills, as Son did not elicit any testimony about medical expenses in the depositions. As observed by the trial court, "there is no expert testimony regarding the necessity of Mr. Hurst's medical bills as reflected on the itemization because no expert ever reviewed the bills or any other tabulation of the expenses." It is too late for Son to now argue for the first time on appeal that "*some* of the medical expenses" should be considered. The trial court did not abuse its discretion in excluding the Driver's medical bills.

## V. CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of the appeal assessed against the City, for which execution may issue if necessary.

_____
JOHN W. MCCLARTY, JUDGE